## TOOLE v. STATE BOARD OF DENTISTRY.

1. CONSTITUTIONAL LAW—AMENDMENTS PROSPECTIVE IN EFFECT.
   Constitutional amendments relative to method of submitting proposed amendments to the Constitution and other questions to the electors do not have retroactive effect.

2. ELECTIONS—SPECIAL QUESTIONS—REFERENDUM OF DENTISTRY ACT.
   Approval or disapproval of dentistry act by the electors of the whole State constituted a special question within the meaning of constitutional provision then requiring submission of special questions on ballot in full (Const. 1908, art. 5, § 1; art. 17, § 3; Act No. 122, Pub. Acts 1939).

3. SAME—BALLOTS—CONSTITUTIONAL LAW.
   While ballot prepared for use on voting machines did not comply with the then command of the Constitution, where result of election would not be changed if all ballots on voting machines were disregarded the election will not be rendered void (Const. 1908, art. 5, § 1; art. 17, § 3; Act No. 122, Pub. Acts 1939).

4. STATUTES—CONSTRUCTION OF STATUTES—REGULATION OF DENTISTRY—RESTRICTION ON GOVERNOR'S POWER OF APPOINTMENT.
   Under statute regulating the practice of dentistry, containing a provision restricting the governor's power to fill vacancies on State board of dentistry by appointment from a list of three licensed dentists recommended to him by the State dental society and also containing a saving or severance clause, excision of the restriction upon governor's power of appointment would not invalidate the act nor render it inoperative for without it the governor has power to make necessary appointments (Act No. 122, §§ 1, 22, Pub. Acts 1939).

5. CONSTITUTIONAL LAW—REGULATION OF DENTISTRY—FREE SPEECH
   —DUE PROCESS—FOURTEENTH AMENDMENT.
   Statute regulating the practice of dentistry and dental surgery
   *held,* not in violation of the free speech and due process sections of the State Constitution nor of the Fourteenth Amendment to the Constitution of the United States (U. S. Const., am. 14; Mich. Const. 1908, art. 2, §§ 4, 16; Act No. 122, Pub. Acts 1939).

6. COSTS—PUBLIC QUESTION—SUIT TO HAVE STATUTE DECLARED IN-
   OPERATIVE.
   No costs are allowed in suit to have statute regulating dentistry adjudged inoperative, a public question being involved (Const. 1908, art. 5, § 1; art. 17, § 3; Act No. 122, Pub. Acts 1939).

Per CHANDLER, C. J., and BOYLES, NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ.

7. STATUTES—CONSTRUCTION—REGULATION OF DENTISTRY—APPOINT-
   MENT OF BOARD OF DENTISTRY.
   Under statute continuing present membership of State board of dentistry, provision requiring the governor to make an annual appointment thereafter and that he fill vacancies by appointment from a list of three licensed dentists recommended to him by the State dental society is construed as merely directory (Act No. 122, § 1, Pub. Acts 1939).

Per CHANDLER, C. J., and BOYLES, NORTH, STARR, BUTZEL, and SHARPE, JJ.

Appeal from Wayne; Verdier (Leonard D.), J., presiding. Submitted October 22, 1941. (Docket No. 75, Calendar No. 41,759.) Decided January 5, 1942. Rehearing denied February 11, 1942. Appeal to Supreme Court of the United States denied by Supreme Court of Michigan March 27, 1942; dismissed by Supreme Court of the United States June 1, 1942.

Bill by John C. Toole and others against Michigan State Board of Dentistry and others to have an act regulating the practice of dentistry adjudged invalid and to enjoin its enforcement. Bill dismissed. Plaintiffs appeal. Affirmed.

*Edward N. Barnard,* for plaintiffs.

*Irving W. Goldsmith,* for intervening plaintiffs, Gerald R. Walker and others.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Arch M. Black,* Assistant Attorney General, for defendant State Board of Dentistry.

*Clark, Klein, Brucker & Waples* (*Wilber M. Brucker* and *Robert A. Sullivan,* of counsel), for intervening defendant Michigan State Dental Society.

WIEST, J.  In the interest of public health, safety and welfare of the people of this State, the legislature, by Act No. 122, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 6780–21 *et seq.,* Stat Ann. 1941 Cum. Supp. § 14.629[1] *et seq.*), regulated the practice of dentistry and dental surgery, provided for the examination, licensing, registration and regulation of persons who may practice the same and, to accomplish that end, created a State board of dentistry, fixed its membership and defined its powers and duties.  The act is long, contains 23 sections, and covers upward of 10 printed pages.  Plaintiffs are registered and licensed dentists, own and operate dental offices, and filed the bill herein to have the act adjudged inoperative for the reasons hereinafter stated and discussed.  Upon hearing in the circuit court the act was adjudged valid and the bill dismissed.  Review is by appeal.

Under referendum procedure, fixed by provisions in the Constitution, the act was required to be submitted to the voters of the State for approval or rejection at the November election, 1940.  In precincts voting by paper ballot the act was printed thereon in full, preceded by the question of approval or disapproval.  In precincts using voting machines

there was used on the machines the following proposal prepared by the secretary of State:

"YES   NO   Referendum on Act No. 122 of the Public Acts of 1939, being 'An act to regulate the practice of dentistry and dental surgery; and to repeal certain acts and parts of acts.'

"An act to regulate the practice of dentistry and dental surgery; to provide for the examination, licensing, registration and regulation of persons who may practice the same; to provide for the disposition of moneys received under this act; to provide penalties for violations of this act, and to repeal certain acts and parts of acts.

"Shall said Act No. 122 of the Public Acts of 1939 be approved?"

A full printed copy of the act was posted in each polling place.

At the election 1,251,650 votes were cast: 735,053 for approval of the act, and 516,597 against approval, or a majority of 218,456 in favor of approval. The votes on the machines totaled 156,202, of which 84,870 approved the act, and 71,332 disapproved. Thus it appears that the act was approved by a majority of unquestioned ballots.

Plaintiffs claim the act was not legally submitted to the voters under the referendum provisions of the Constitution (1908), art. 17, § 3, in the ballots used on the voting machines.

The provision in the Constitution providing for referendum of acts of the legislature, article 5, § 1, at the time of the submission in this instance, required that "The text of all measures to be submitted shall be published as constitutional amendments are required by law to be published."

Article 17, § 3, of the Constitution, at the time of the referendum, provided:

"All proposed amendments to the Constitution submitted to the electors shall be published in full, with any existing provisions of the Constitution which would be altered or abrogated thereby, and a copy thereof shall be posted at each registration and election place. Proposed amendments shall also be printed together with any other special questions to be submitted at such election in full on a single ballot separate from the ballot containing the names of candidates or nominees for public office."

These provisions regulating procedure under the initiative, referendum and special questions clearly stated essentials accompanying submission, and this continued until the subsequent amendment to article 17, § 3, of the Constitution, effective May 7, 1941, which now reads:

"All proposed amendments to the Constitution and other questions to be submitted to the electors shall be published in full, with any existing provisions of the Constitution which would be altered or abrogated thereby, and a copy thereof shall be posted in each polling place. The purpose of any such proposed amendment or question shall be designated on the ballots for submission to the electors in not more than 100 words, exclusive of caption. Such designation and caption shall be prepared by the secretary of State or by such other authority as shall be hereafter designated by law within 10 days after the filing of any proposal and shall consist of a true and impartial statement of the purpose of the amendment or question in such language as shall create no prejudice for or against such proposal."

This, of course, did not have retroactive effect, and the ballot prepared for use on the voting machines did not comply with the then command of the Constitution.

Does the mistake of the election officials, in not complying with the letter of the law in preparing the ballot for use on voting machines, render the

election void when it appears that the ballots cast on the machines in no respect affect the result?

In *People, ex rel. Hartwick,* v. *Avery,* 102 Mich. 572, it was held:

"The electors are not to be deprived of the result of their votes at an election by the mistake of election officers, when it does not appear to have changed the result."

See, also, *People, ex rel. Williams,* v. *Cicott,* 16 Mich. 283 (97 Am. Dec. 141) ; *Attorney General, ex rel. Miller,* v. *Miller,* 266 Mich. 127 (106 A. L. R. 387).

In *Michigan State Dental Society* v. *Secretary of State,* 294 Mich. 503, involving the referendum petitions relative to this same act, we held, in a *per curiam* added to the opinion prepared by the late Justice Potter, that since there were sufficient valid signatures remaining after the exclusion of invalid ones, the measure could be submitted to the electorate.

Assuming that the referendum votes in the precincts using machines were void, nevertheless valid votes were cast in all other precincts which resulted in approval of the act by a majority of all electors voting thereon.

Among the constitutional questions raised is that pertaining to the language of the act limiting appointment by the governor. This portion of section 1 reads:

"The governor shall annually hereafter appoint 1 member of said board, and shall fill any vacancy for an unexpired term, by appointment from a list of 3 licensed dentists recommended to him by the Michigan State dental society."

It is urged that under the rule promulgated in *Milk Marketing Board* v. *Johnson,* 295 Mich. 644, such limitation is fatally defective.

However, the act under consideration contains a saving clause, which reads:

"SEC. 22. This act is declared to be severable, and should any word, phrase, sentence, provision or section hereof be hereafter declared unconstitutional or otherwise invalid, the remainder of this act shall not thereby be affected, but shall remain valid and in full force and effect for all intents and purposes."

Excision of the provision relative to appointments would not invalidate the act nor render it inoperative for without it the governor has power to make the necessary appointments.

The claim that the act violates the free speech section of the Constitution (1908), article 2, § 4, and the due process section, article 2, § 16, as well as the Fourteenth Amendment to the Constitution of the United States, is fully answered in *Semler* v. *Oregon State Board of Dental Examiners,* 294 U. S. 608 (55 Sup. Ct. 570, 79 L. Ed. 1086), and *People* v. *Carroll,* 274 Mich. 451.

We find no merit in the appeal and the decree in the circuit court is affirmed. A public question being involved, there will be no costs.

CHANDLER, C. J., and BOYLES, NORTH, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.

BOYLES, J. *(concurring)*. I concur in the result reached by Mr. Justice WIEST. However, I do not agree with the reasoning on the question concerning appointments by the governor, that the constitutionality of the dentistry act, Act No. 122, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 6780–21 *et seq.,* Stat. Ann. 1941 Cum. Supp. § 14.629[1] *et seq.*), as to that issue can be upheld merely because the act contains a "saving or severance" provision. The so-called milk marketing act, Act No. 146, Pub. Acts 1939

(Comp. Laws Supp. 1940, § 5394–41 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 12.805[1] *et seq.*), contained the same saving provision, yet that act was held by a majority of this court to be void in its entirety because of its provisions for appointment of the board. *Milk Marketing Board* v. *Johnson,* 295 Mich. 644. However, there is an essential difference between the two acts which, in my opinion, saves the dentistry act. In the latter, the act itself continues present members of the dentistry board in office until the expiration of term, requires the governor to make an annual appointment thereafter, and merely requires that the governor "shall fill any vacancy for an unexpired term, by appointment from a list of 3 licensed dentists recommended to him by the Michigan State dental society." The act creating the milk marketing board in express terms designates the members of the board: "2 shall be milk producers * * * 1 shall be a distributor." Thus, the act itself expressly directs that a majority of the board shall consist of members who have a direct pecuniary interest in the matters submitted to them, much of which relates directly to the financial interest of the members themselves and the divergent interests of the groups from which the act itself requires them to be selected. For the above reason, the provision in the dentistry act requiring the governor to fill vacancies from a list recommended by the State dental society is directory; the provision in the milk marketing act was held by this court to be mandatory, and void. Because of this essential difference between the two acts, and not because of the saving clause in the dentistry act, the latter act should be held constitutional.

CHANDLER, C. J., and NORTH, STARR, BUTZEL, and SHARPE, JJ., concurred with BOYLES, J.