ROSENBROCK *v.* SCHOOL DISTRICT NO. 3, FRACTIONAL.

1. ELECTIONS—IRREGULARITIES—SCHOOL BONDS—INTENTIONAL MIS-
CONDUCT—EVIDENCE.

Irregularity, consisting of instruction to election inspectors by
secretary of school board that voters who were residents but
not taxpayers in the school district might vote at election
on question of approval of school bonds *held,* not to have
been shown to have been intentional misconduct as claimed
by plaintiffs in quo warranto proceeding when they sought
leave to amend information following the taking of proofs,
it being a fair conclusion that secretary misunderstood the
statements as to the law made by attorney whom he had
consulted (Const 1908, art 3, § 4).

2. SAME—FRAUD—EVIDENCE.

Fraudulent intentions on the part of school officers may not be
lightly assumed in their participation in an election on the
matter of approval of school bonds, but it must be shown by
satisfactory proofs.

3. PLEADING—AMENDMENT—DISCRETION OF TRIAL JUDGE.

The allowance of amendments to pleadings generally rests in the
discretion of the trial judge.

4. QUO WARRANTO—LEAVE TO AMEND—INFORMATION—FRAUD—EVI-
DENCE.

Leave to amend information in quo warranto proceeding, sought
after proofs had been taken and submission of briefs by
counsel, so as to aver that irregularity in the conduct of
school bond election was intentional *held,* to have been
properly denied, where record fairly shows officer involved
had misunderstood attorney's statements.

REFERENCES FOR POINTS IN HEADNOTES
[1, 7]  43 Am Jur, Public Securities and Obligations §§ 79, 98.
[2]  18 Am Jur, Elections § 303.
[3]  41 Am Jur, Pleading § 293.
[4]  44 Am Jur, Quo Warranto § 99.
[5, 6]  18 Am Jur, Elections §§ 206, 224, 225.

5. ELECTIONS—IRREGULARITIES.

    Irregularities in the conducting of an election will not invalidate the action taken unless it appears that the result was, or may have been, affected thereby, in the absence of provision in the Constitution indicating that a failure to observe the voting limitation would render the election void (Const 1908, art 3, § 4).

6. SAME—IRREGULARITIES.

    It is contrary to public policy to hold that slight irregularities, for which the voters were not to blame, should invalidate an election, unless the irregularities consist of failure to observe mandatory provisions the neglect to follow which will invalidate the election.

7. SAME—SCHOOL ELECTIONS—INELIGIBLE VOTERS.

    Election whereby school bonds were approved by a majority of 74 votes will not be held invalid because ineligible persons were permitted to vote, where even if the votes of the 30 shown to have been ineligible and 23 others whom the records do not show to have been eligible were deducted the result would not be changed (Const 1908, art 3, § 4).

Appeal from Bay; Louis (David R.), J. Submitted November 14, 1955. (Docket No. 53, Calendar No. 46,619.) Decided December 28, 1955.

Quo warranto by Herman Rosenbrock and Wilhelm Rosenbrock against School District No. 3, Fractional, Townships of Williams and Monitor, and the City of Auburn, and certain of its officers and trustees, to determine whether certain irregularities invalidated special election on bond issue. Judgment for defendants. Plaintiffs appeal. Affirmed.

*John W. Piggott* (*Bernard S. Frasik* and *Joseph J. Favazza,* of counsel), for plaintiffs.

*Bartlett, King & Learman,* for defendants.

CARR, C. J. The proofs taken on the hearing of this proceeding in circuit court indicate that there

was no material dispute between the parties as to the facts. On the 3d of February, 1955, a special election was held in defendant school district, at which certain questions were submitted to the voters. The first proposition had reference to the issuance of bonds, in an amount not exceeding $220,000, for the purpose of raising money to build and equip a schoolhouse. The second question, as stated, contemplated an increase in the tax rate provided by article 10, § 21, of the Constitution (1908)* by adding 10 mills on the assessed valuation of property in the district, the period of such increase being 20 years, for the purpose of raising funds for building and furnishing the schoolhouse sought to be constructed.

It is conceded that under the Constitution of the State, art 3, § 4, only those voters having property assessed for taxes within the district were entitled to vote on the first proposition. The inspectors of election, however, were incorrectly advised by the secretary of the school board that electors who were not taxpayers should be allowed to vote on such question. It is conceded that 30 ballots were cast on proposition No 1 by parties who did not have property assessed for taxes in the district. It further appears that 23 additional ballots were cast by parties whom the records do not affirmatively show were qualified to do so. Assuming, however, that the 53 votes in question were considered as cast in favor of the issuance of bonds, and deducted from the affirmative vote, there remained a majority of 74 ballots, as disclosed by the canvass, favoring the bond issue.

On leave granted by the circuit court of Bay county, plaintiffs were permitted to file an information in the nature of quo warranto against the school district and the other defendants for the purpose

* As amended in 1948. See PA 1949, p 688.—REPORTER.

of testing the legality of the election, insofar as the first proposition submitted was concerned. There is no issue presented in the case with reference to the approval of the second proposition, that is, the increase in the millage rate. In their pleading plaintiffs relied on the failure to observe, in the voting on the bond issue, the limitation imposed by article 3, § 4, of the Constitution (1908). A motion to dismiss was made by defendants on the ground that the information was insufficient. Thereupon plaintiffs were allowed to amend by alleging that the result of the election was affected by the improperly cast ballots. Defendants filed answer and the cause proceeded to hearing.

Following the taking of the proofs and the submission of briefs by counsel, plaintiffs moved for leave to further amend their information in such manner as to aver that the irregularity in the conduct of the election, as shown by the testimony, was intentional. It was, in effect, the claim of counsel for plaintiffs that the secretary of the school board intentionally, and presumably through improper motives, misrepresented to the inspectors of election the law applicable to the qualifications of voters on the bonding proposition. The motion was denied, the trial judge indicating in his order that it came too late and that the proofs taken did not support the proposed amendment. Final judgment was then entered dismissing the information. Plaintiffs have appealed, alleging that the trial court was in error in denying leave to amend and in entering the judgment in favor of defendants.

We have carefully examined the testimony set out in the record and do not find therein any proper basis for a conclusion, or a claim, that the secretary of the school board intentionally misled the inspectors with reference to the qualifications of voters. It is a fair conclusion that he misunderstood the

statements as to the law made by an attorney whom he consulted, and that the irregularity of which the plaintiffs complain resulted from such misunderstanding. Fraudulent intentions may not be lightly assumed in a case of this nature, but must be shown by satisfactory proofs. The trial judge after listening to the testimony came to the conclusion indicated by his order denying leave to amend. As a general rule the allowance of amendments to pleadings rests in the discretion of the trial judge. *Konstantine* v. *City of Dearborn,* 280 Mich 310, 314; *Randall* v. *Douglass,* 321 Mich 492, 495. Under the circumstances, leave to amend was properly denied.

As before pointed out, the deduction from the affirmative vote on the bonding issue of the number of ballots cast by ineligible voters, together with the additional ballots questioned for lack of an affirmative showing, did not affect the result. The proposition carried by a margin of 74 votes. It is the theory of plaintiffs, however, that the provision of article 3, § 4, of the Constitution (1908), above referred to, is mandatory, and that the mere receiving of improper ballots, without reference to the effect on the result, vitiated the election. We are not in accord with such claim. The section of the Constitution in question contains no provision indicating that a failure to strictly observe the voting limitation renders the election void. It has been repeatedly held by this Court that irregularities in the conducting of an election will not invalidate the action taken unless it appears that the result was, or may have been, affected thereby.

In *Lindstrom* v. *Board of Canvassers of Manistee County,* 94 Mich 467, 469 (19 LRA 171), it was said:

"It may be stated, as a general rule, that the provisions of law relating to the manner of conducting elections will not be held so far mandatory as that

a departure therefrom will result in the disfranchisement of a district or a class of voters, or the defeat of a candidate himself free from fraud, except in cases where the legislative intent that such departure shall have that effect is clearly and unequivocally expressed. This is a rule which has been applied in this State."

Of like import is *People* v. *Avery,* 102 Mich 572, 574, where the Court declared that:

"The electors are not to be deprived of the result of their votes at an election by the mistake of election officers, when it does not appear to have changed the result. Under repeated decisions it is settled that the matters relied on here were irregularities, and did not invalidate the election. (Citing prior cases.)"

Likewise, in *Thompson* v. *Cihak,* 254 Mich 641, in which plaintiff sought to restrain the issuance of bonds, authorized at a special school election, because of a number of irregularities occurring in the conduct of the election, it was held that the voters should not be disfranchised because of failure to follow the statute in all particulars. It is significant to note that one of the claims was that the election inspectors received and counted ballots cast by persons not eligible to vote on the matter. With reference thereto it was said (p 644):

"Nor will the fact that election inspectors permitted unqualified persons to vote invalidate the election unless it is affirmatively shown that such wrongful vote overturned the declared result of the election. *Sargent* v. *City of Santa Fe,* 24 NM 411 (174 P 424)."

The court also made the following observations which we think are applicable to the situation in the case at bar (p 646):

"In the final analysis, we must consider the fact that this election was honestly and fairly conducted. Slight irregularities are more than apt to creep into the procedure. As a rule those in charge of such an election are not lawyers. When, as in this case, even doubt is raised in the briefs presented as to which law the election should have followed, it is evident that a knowledge of the law and its details is frequently not possessed by the officers and electors in a fractional school district, whose honesty and fairness are not even remotely questioned. To hold that slight irregularities, for which the voters were not to blame, should invalidate the election, is contrary to public policy. Unless the irregularities consist of failure to observe mandatory provisions, the neglect to follow which will invalidate the election, they will be overlooked, in the absence of fraud or coercion."

The foregoing language was quoted with approval in the recent decision in *Carnes* v. *Livingston County Board of Education,* 341 Mich 600, 605.

Among other cases in which the question here involved has been considered is *Attorney General, ex rel. Miller,* v. *Miller,* 266 Mich 127 (106 ALR 387). It was there determined as a matter of fact that no actual or intentional fraud in the conduct of the election involved, of such character as to affect the entire ballot in the township, had been shown. In discussing the effect of allowing unregistered voters to cast their ballots, it was said (pp 146, 147):

"In *Attorney General, ex rel. Seavitt, Jr.,* v. *McQuade,* 94 Mich 439, the Court held the rule laid down in Paine on Elections, § 499, and McCrary on Elections (3d ed), §§ 190–192, founded on good sense and sustained by the authorities. The rule was:

" 'When fraud on the part of the officers of election is established, the poll will not be rejected, unless it shall prove to be impossible to purge it of the fraud. When the result at a poll, as shown by the

returns, is false and fraudulent, and it is impossible to ascertain the actual vote from the other evidence in the case, the vote of such poll must be wholly rejected.' * * . *

" 'To warrant setting aside the election, it must appear affirmatively that the successful ticket received a number of improper votes, which, if rejected, would have brought it down to a minority.' Cooley, C. J., *People, ex rel. Williams,* v. *Cicott,* 16 Mich 283, 325 (97 Am Dec 141)."

In view of the claim of counsel for appellants that the provisions of article 3, § 4, of the Constitution (1908) must be construed as mandatory and given the effect of vitiating an election in which ballots are received from persons not entitled to vote on bonding issues, without reference to the effect on the result, the holding of this Court in *Toole* v. *State Board of Dentistry,* 300 Mich 180, is significant. The case involved the validity of an election, under the referendum provision of the Constitution, on PA 1939, No 122, which regulated the practice of dentistry.* It appeared that in many precincts of the State voting machines were used, the total number of referendum votes cast thereon being 156,202. The act was approved by a majority of 218,456 votes. It was not in dispute that the ballot prepared for use on the voting machines did not comply with the constitutional requirements in force at the time. Citing prior decisions of the Court, it was held that the election was not void because of the failure to properly state the question on the voting machines, the holding being summarized as follows:

"While ballot prepared for use on voting machines did not comply with the then command of the Constitution, where result of election would not be changed if all ballots on voting machines were dis-

---

* CL 1948, § 338.201 *et seq.* (Stat Ann 1953 Cum Supp § 14.629[1] *et seq.*).—Reporter.

regarded the election will not be rendered void (Const 1908, art 5, § 1; art 17, § 3; PA 1939, No 122)." (Syllabus 3.)

Counsel for appellants call attention in their brief to cases involving factual situations of a wholly different nature than that involved in the case at bar. Among these decisions is *Attorney General, ex rel. Stillson,* v. *Stillson,* 108 Mich 419. There an election in a certain township in Newaygo county was challenged on the ground that the inspectors of election had employed an interpreter who remained within the railing of the polling place and conversed with electors who came therein for the purpose of voting after receiving their ballots and before marking and depositing the same. The conversations between such voters and the interpreter were carried on in a foreign language. It further appeared that the interpreter so employed opposed the election of one of the candidates for the office of commissioner of schools, the relator in the quo warranto proceeding. It was found that the improper influence that the interpreter had the opportunity to exert may have changed the result of the election in the county and that, in consequence, the vote of the township should be rejected. Obviously the case illustrates the situation presented where, through a flagrant disregard of the requirements of the election laws, voters generally are exposed to improper influences.

In *Dearborn Township School District No. 7* v. *Cahow,* 289 Mich 643, there was involved the validity of an election on the question of issuing school district bonds. Under article 3, § 4, of the State Constitution (1908), as amended at the general election in November, 1932, the husbands and wives of electors who had property assessed for taxes in the district were entitled to vote. On the election the spouses of

qualified electors were excluded, in violation of the constitutional provision in question. The defendant, who was president of the board of education of the school district, declined to certify the bonds on the ground that persons legally qualified to vote were prevented from doing so. Mandamus proceedings were instituted in consequence of such refusal. Issuance of the writ was denied by this Court on the ground that an eligible class of voters had been excluded from participating in the election and that as a result it was void. In the case at bar we have a wholly different situation. Here the number of votes improperly cast was definitely fixed. There is no dispute between the parties in this respect. Assuming that all such ineligible voters, together with those whose qualifications did not appear of record, voted for the bonding proposition, the result was not changed by deducting from the affirmative vote the total number of ballots cast by ineligible, or possibly ineligible, voters. This was not the situation presented in the *Dearborn Township School District Case.*

The judgment of the trial court is affirmed, with costs to appellees.

BUTZEL, SMITH, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.