VORVA v PLYMOUTH-CANTON COMMUNITY SCHOOL DISTRICT

Docket No. 206096. Submitted June 2, 1998, at Lansing. Decided July 10, 1998, at 9:30 A.M. Leave to appeal sought.

Jerry Vorva, on behalf of himself and 716 unknown voters of the Plymouth-Canton Community School District, brought an action in the Wayne Circuit Court against the Plymouth-Canton Community School District and the Board of Canvassers for the Plymouth-Canton Community School District, seeking a writ of mandamus and injunctive relief. In March 1997, an election was held concerning whether the defendant school district should issue bonds for the purpose of constructing and improving school facilities. The bond issue was authorized by a margin of less than one hundred votes out of the slightly more than twelve thousand votes cast. Because of the more than seven hundred votes that had been declared invalid as a result of them having been cast without an indication whether the voter was for or against the proposal and because of the belief the votes indicating no choice were the result of a malfunction of the UniLect Corporation electronic voting equipment that was used for the election, the plaintiff and others sought a recount or a special election. The Wayne County Board of Canvassers conducted a recount, which resulted in the same result as the original count. The Board of Canvassers for the Plymouth-Canton Community School District, after simulating an election, concluded that the UniLect System machines were neither defective nor malfunctioning and denied the petition for a special election. The court, James J. Rashid, J., granted summary disposition for the defendants. The plaintiff appealed.

The Court of Appeals *held*:

1. Mandamus is proper where the plaintiff has a clear legal right to performance of the specific duty sought to be compelled, the defendant has the clear legal duty to perform the act, and the act is ministerial, involving no exercise of discretion or judgment. Mandamus is an extraordinary remedy that may lie to compel the exercise of discretion, but not to compel its exercise in a particular manner.

2. A board of canvassers is authorized to order a special election if it is shown that an elector cannot cast a valid vote by reason of a defect or mechanical malfunction of a voting machine, voting

device, ballot, or other election equipment or material. MCL 168.831 et seq.; MSA 6.1831 et seq. Because the defendant board of canvassers tested the voting equipment used in the disputed election and concluded that there were no defects or mechanical malfunctions and the plaintiff presented no evidence to the contrary, the defendant board of canvassers had no legal obligation to order a special election.

3. The plaintiff's argument that the voting system used was defective not because of a mechanical malfunction but rather because the electorate was not properly instructed in the use of the machines does not establish a basis for the issuance of a writ of mandamus against the defendant board of canvassers, because such a "defect" is not contemplated by the provisions of MCL 168.831 et seq.; MSA 6.1831 et seq., and review of the substantive quality of the instructional materials accompanying a voting machine lies with the Secretary of State, not with a local board of canvassers. Accordingly, the plaintiff failed to establish that he was entitled to a writ of mandamus directing the defendant board of canvassers to hold a special election.

4. The court properly granted summary disposition with respect to the plaintiff's claim that the defendant school district failed to comply with the mandate of MCL 168.770a; MSA 6.1770(1) by failing to secure the approval of the Secretary of State to use the UniLect System. The court properly found that the UniLect System, being an electronic system, was subject to the provisions §§ 794 through 799a of the Michigan Election Law, MCL 168.794-168.799a; MSA 6.1794-6.1799(1), rather than the provisions of MCL 168.770a; MSA 6.1770(1).

5. MCL 168.795a; MSA 6.1795(1) provides that an electronic voting system may not be used until it has been approved by the Board of State Canvassers and that, after such a system is approved, any improvement or change in the system must be submitted to the Board of State Canvassers for its approval. Although the UniLect System had been approved for use by the Board of State Canvassers, the system used in the bond election had a change that had not been approved by the Board of State Canvassers. Accordingly, there was technical noncompliance with the mandate of § 795a. However, the trial court properly found that the change, which related to recounts, did not affect the casting or tabulation of votes and that the defendant school district's noncompliance with the mandate of § 795a did not render the election invalid.

6. Because there was no allegation of intentional or purposeful discrimination and the 716 voters whose votes were declared inva-

lid were given an equal opportunity to participate in the election, there was no denial of equal protection of the law.

Affirmed.

1. MANDAMUS — CONDITIONS FOR ISSUANCE — MINISTERIAL ACT — EXERCISE OF DISCRETION.

A writ of mandamus is properly issued where the plaintiff has a clear legal right to performance of the specific duty sought to be compelled, the defendant has the clear legal duty to perform the act, and the act is ministerial, involving no exercise of discretion or judgment; mandamus is an extraordinary remedy that may lie to compel the exercise of discretion, but not to compel its exercise in a particular manner.

2. ELECTIONS — BOARDS OF CANVASSERS — SPECIAL ELECTIONS — DEFECTIVE BALLOT OR EQUIPMENT.

A board of canvassers is authorized to order a special election if it is shown that an elector cannot cast a valid vote by reason of a defect or mechanical malfunction of a voting machine, voting device, ballot, or other election equipment or material (MCL 168.831 et seq.; MSA 6.1831 et seq.).

3. ELECTIONS — ELECTRONIC VOTING SYSTEMS — BOARD OF STATE CANVASSERS — SECRETARY OF STATE.

Approval of an electronic voting system lies with the Board of State Canvassers pursuant to § 795a of the Michigan Election Law rather than with the Secretary of State pursuant to § 770a of the Michigan Election Law (MCL 168.770a, 168.795a; MSA 6.1770[1], 6.1795[1]).

4. ELECTIONS — ELECTRONIC VOTING SYSTEMS — APPROVAL OF SYSTEMS.

The use of an electronic voting system that has been approved by the Board of State Canvassers but for which the required approval of a change to the system has not been secured will not invalidate an election where the use of the changed system did not impair the electorate's right to vote or affect the outcome of the election (MCL 168.795a; MSA 6.1795[1]).

*Sempliner, Thomas & Boak* (by *Stephen H. Boak*), for the plaintiff.

*Thrun, Maatsch and Nordberg, P.C.* (by *Robert M. Thrun, Beverly J. Bonning,* and *Timothy R. Winship*), for Plymouth-Canton Community Schools.

*DeBiasi & Associates, P.C.* (by *William J. DeBiasi*), for Plymouth-Canton Community School District Board of Canvassers.

Before: SAWYER, P.J., and KELLY and DOCTOROFF, JJ.

PER CURIAM. Plaintiff appeals as of right from the circuit court's order granting summary disposition for defendants pursuant to MCR 2.116(C)(8) and (C)(10). We affirm.

On March 22, 1997, the Plymouth-Canton Community School District held a special election to authorize a bond issue in the amount of $79,795,000. The school district sought to borrow this sum of money for the purposes of constructing and improving school facilities. After the polls closed, the Board of Canvassers for the Plymouth-Canton Community School District canvassed the returns of the election and concluded that there were 5,733 votes in favor of the bond proposal, 5,637 votes against it, and 721 invalid votes.

After the election, several individuals, including plaintiff, filed petitions with the school district calling for a recount or a special election because there had been mechanical malfunctions in the UniLect Corporation voting equipment,[1] which "disenfranchised"

---

[1] At the election, the school district used an electronic voting system developed by UniLect Corporation. The UniLect System was approved for use in Michigan by the Board of State Canvassers on March 11, 1994, and had been used on four prior occasions for township and school district elections. The system permits the voter to touch a "yes" or "no" rectangular box on a touch sensitive screen to enter the vote. When the desired box is touched, it becomes illuminated. However, if that box is touched for a second time, the illumination shuts off and the voter has, effectively, withdrawn that selection. After the selection is made, the voter must touch an "end all voting" box to record the vote. If the voter's selection is not illuminated when the "end all voting" box is touched, no vote is

over seven hundred voters. The Board of Canvassers for the Plymouth-Canton Community School District convened to consider the petitions for a recount and the petitions for a special election. The petitions were accepted, which resulted in the Wayne County Board of Canvassers conducting a recount on April 15, 1997, which was then followed by a testing of the UniLect System for mechanical defects.

After the recount, the Wayne County Board of Canvassers concluded that the bond issue had passed by a vote of 5,733 "yes" to 5,637 "no." The Board of Canvassers for the Plymouth-Canton Community School District, after simulating an election and reviewing the results, concluded that the UniLect System machines were not defective or malfunctioning. Therefore, the petitions for a special election were denied. Thereafter, plaintiff filed a complaint for mandamus and injunctive relief.

Plaintiff first contends that the trial court erred in denying his request for a writ of mandamus compelling the board of canvassers to void the election and order a special election. We disagree.

Issuance of a writ of mandamus is proper where (1) the plaintiff has a clear legal right to performance of the specific duty sought to be compelled, (2) the defendant has the clear legal duty to perform such act, and (3) the act is ministerial, involving no exercise of discretion or judgment. *Bingo Coalition for Charity—Not Politics v Bd of State Canvassers*, 215 Mich App 405, 413; 546 NW2d 637 (1996). Mandamus is an extraordinary remedy that may lie to compel the

recorded. Consequently, if a voter makes his initial selection, then touches the selection for a second time, and then does not make an alternative selection before touching "end all voting," no vote has been recorded.

exercise of discretion, but not to compel its exercise in a particular manner. *Teasel v Dep't of Mental Health*, 419 Mich 390, 409-410; 355 NW2d 75 (1984).

The board of canvassers is authorized to order a special election if it has been shown that an elector cannot cast a valid vote at an election because of a defect or mechanical malfunction of a voting machine, voting device, ballot, or other election equipment or material. MCL 168.831 *et seq.*; MSA 6.1831 *et seq.* The board of canvassers conducted an examination of the voting machines and concluded that there were no defects or mechanical malfunctions, and plaintiff has presented no evidence to the contrary. Consequently, defendant board had no legal obligation to order a special election, therefore, a writ of mandamus may not ensue.

In further support of his position, plaintiff argues that the voting system was defective, not by virtue of a mechanical malfunction of the machines themselves, but because the electorate was not properly instructed in the use of the machines. This type of "defect" is not contemplated by the provisions of MCL 168.831 *et seq.*; MSA 6.1831 *et seq.*, because it is not within the purview of a local board of canvassers to review the substantive quality of the instructional materials accompanying the machine. The Secretary of State is charged with the responsibility of providing instructions for the use of electronic voting machines to local election officials. MCL 168.31; MSA 6.1031, MCL 168.795a(2); MSA 6.1795(1)(2). We find no merit in plaintiff's request for a writ of mandamus.

Next, plaintiff argues that the trial court erred in dismissing count I of the complaint wherein plaintiff alleged that the school board violated the mandates

of MCL 168.770a; MSA 6.1770(1) because it failed to seek the approval of the Secretary of State before using the UniLect System in the March 22, 1997, election. We disagree. Section 770a, in general, requires the approval of the Secretary of State before a new voting system may be used. However, the UniLect System was an *electronic* voting system. Use of systems of this nature are specifically addressed in §§ 794 through 799a of the Election Law.[2] MCL 168.795a; MSA 6.1795(1) requires that the board of canvassers approve electronic voting systems. In this case, the Board of State Canvassers approved the UniLect System for use in Michigan in March 1994. Further, MCL 168.794c; MSA 6.1794(3) specifically provides that §§ 794 to 799a control with respect to elections where electronic voting systems are used. The trial court properly found that § 795a, not § 770a, governed the use of the UniLect System. Thus, we find no error in the court's dismissal of count I of plaintiff's complaint.

Although the court granted summary disposition with respect to count I of plaintiff's complaint, it granted plaintiff leave to amend his complaint to allege that the school board failed to comply with the provisions of § 795a. As addressed above, § 795a requires that electronic voting systems be approved by the Board of State Canvassers before use in an election. In addition, that section requires that if the approved electronic voting system is improved or changed, it must be submitted in its improved or changed form for recertification by the Board of State Canvassers. It is the alleged violation of this later pro-

[2] MCL 168.794; MSA 6.1794 through MCL 168.799a; MSA 6.1799(1).

vision that plaintiff pleaded in his amended complaint.

After the amendment was made, defendants renewed their motions for summary disposition. At that time, because plaintiff could not establish that the alleged statutory violation affected the outcome of the election, or that it was the cause of the 716 invalid votes, and the UniLect System still met the minimum standard for certification, the court granted summary disposition with respect to plaintiff's claims of statutory noncompliance. We find no error in this ruling.

Under the circumstances of the present case, noncompliance with the statute does not render the election results invalid. In *Noel v Oakland Co Clerk*, 92 Mich App 181, 188-189; 284 NW2d 761 (1979), this Court quoted 29 CJS, Elections, § 67:

> "Ordinarily, provisions of an election law are mandatory if enforcement is sought before election in a direct proceeding for that purpose; *but after an election such provisions are directory only, in support of the result, unless they are of such a character that their violation would effect an obstruction to the free and intelligent casting of the vote, or to the ascertainment of the result, or unless they affect an essential element of the election, or it is expressly declared by statute that compliance with them is essential to the validity of the election.*" [Emphasis added.]

See, also, *Gracey v Grosse Pointe Farms Clerk*, 182 Mich App 193, 208; 452 NW2d 471 (1989). Further, "[i]t has been repeatedly held by [the Michigan Supreme Court] that irregularities in the conducting of an election will not invalidate the action taken unless it appears that the result was, or may have

been, affected thereby." *Rosenbrock v School Dist No 3, Fractional*, 344 Mich 335, 339; 74 NW2d 32 (1955).

In this case, plaintiff cannot show that the school board's alleged violation obstructed the free and intelligent casting of the vote, or the ascertainment of the results, or that it affected an essential element of the election. Plaintiff cannot show the presence of any of these factors because even in its changed state, the UniLect System still met the minimum requirements for certification and the "change" that plaintiff contends warranted recertification is unrelated to the ability of the voter to cast his vote. The "change" was solely related to the ability to ascertain results in the event of a recount. In this regard, the machine was still able to perform a recount, indeed it was required to do so in this case, it just lacked the capacity to do so from two separate sources. Because plaintiff's challenge came after an election, the statutory provisions became purely directory. *Noel, supra* at 188-189. As such, statutory noncompliance does not render the election invalid. *Id.*

Finally, plaintiff alleges that he and the unidentified 716 voters were denied the equal protection of the law. We disagree. Plaintiff's claims are not of the nature recognized by the Equal Protection Clause of either the federal or the state constitution. The equal protection guarantee requires that persons under similar circumstances be treated alike. *El Souri v Dep't of Social Services*, 429 Mich 203, 207; 414 NW2d 679 (1987). "United States Supreme Court precedents consistently indicate that the United States Constitution's Equal Protection Clause reaches only intentional or purposeful discrimination." *Harville v State Plumbing*

*& Heating, Inc*, 218 Mich App 302, 306; 553 NW2d 377 (1996).

In this case, plaintiff did not allege any intentional or purposeful discrimination or that similarly situated individuals were treated differently. Indeed, it does not appear from the record that there was any differential treatment of the voters. Each voter was given an opportunity to vote under the same circumstances. Unfortunately, because of voter error or a conscious decision not to cast a vote while in the booth, 716 votes were invalid. In *Hadley v Junior College Dist of Metropolitan Kansas City, Mo*, 397 US 50, 56; 90 S Ct 791; 25 L Ed 2d 45 (1970), the United States Supreme Court recognized that the "Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election . . . ." Because each voter was given an equal opportunity to cast his vote, and over eleven thousand electors were successful in this endeavor, no equal protection violation has occurred.

Affirmed.