CARTER v ANN ARBOR CITY ATTORNEY

Docket No. 258282. Submitted June 15, 2006, at Detroit. Decided June
    27, 2006, at 9:00 a.m. Leave to appeal sought.

James J. Carter filed a complaint in the Washtenaw Circuit Court for
    a writ of mandamus compelling the Ann Arbor City Attorney to
    hire him as an assistant city attorney pursuant to the veterans'
    preference act (VPA), MCL 35.401 *et seq*. The trial court, Donald E.
    Shelton, J., granted the defendant's motion for summary disposi-
    tion on the grounds that the plaintiff failed to establish a right to
    mandamus and failed to submit documentation establishing that
    he was qualified for either of the two posted positions. The plaintiff
    appealed.

The Court of Appeals *held*:

1. Notwithstanding the VPA, a hiring authority may refuse to
    hire a veteran if the hiring authority determines that the veteran
    does not possess the requisite qualifications for the position or that
    a nonveteran applicant is substantially better qualified.

2. To trigger the hiring preference in the VPA, the veteran's
    qualifications must be at least comparable to those of the nonvet-
    eran applicants.

3. The trial court properly held that the plaintiff failed to
    establish a right to mandamus. The plaintiff did not show that he
    possessed the requisite qualifications for the open positions, that
    the defendant had a clear legal duty to hire him, or that the act of
    hiring an assistant city attorney was a ministerial task.

Affirmed.

STATUTES — VETERANS' PREFERENCE ACT — APPLICATION.

Notwithstanding the veterans' preference act, a hiring authority
    may refuse to hire a veteran if the hiring authority determines
    that the veteran does not possess the requisite qualifications for
    the position or that a nonveteran applicant is substantially better
    qualified (MCL 35.401 *et seq*.).

*James J. Carter, in propria persona.*

*David W. Swan* for the defendant.

Before: FORT HOOD, P.J., and CAVANAGH and SERVITTO, JJ.

SERVITTO, J. Plaintiff appeals as of right a circuit court order granting summary disposition in favor of defendant and denying plaintiff's motion for summary disposition in this veterans' preference act case. Because plaintiff failed to demonstrate his ability to perform the job of assistant city attorney at the level of skill and with the expertise required by the employer, the veterans' preference act did not grant him preference in public service employment, and we therefore affirm.

In response to a notice of job vacancies, plaintiff applied for a position as assistant city attorney for the city of Ann Arbor. When two others were ultimately hired for the available positions, plaintiff filed a complaint for a writ of mandamus, seeking to compel the Ann Arbor City Attorney to employ him as an assistant city attorney. Plaintiff asserted that because he is a veteran and qualified for the positions, he was entitled to preference for employment under the veterans' preference act, MCL 35.401 *et seq*. Plaintiff further claimed that in hiring nonveterans rather than him, defendant violated the act. The parties filed cross-motions for summary disposition and, as previously indicated, the trial court granted defendant's motion for summary disposition, ruling that plaintiff failed to establish a right to mandamus and further failed to submit materials or documentation demonstrating he had the requisite qualifications for the positions.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Corley v Detroit Bd of Ed,* 470 Mich 274, 277; 681 NW2d 342 (2004). Summary

disposition may be granted pursuant to MCR 2.116(C)(8) on the ground that the opposing party "has failed to state a claim on which relief can be granted." *Radtke v Everett*, 442 Mich 368, 373; 501 NW2d 155 (1993). In assessing a motion brought under MCR 2.116(C)(8), all factual allegations are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the facts. *Id.* In considering a motion pursuant to MCR 2.116(C)(10), a court considers affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in a light most favorable to the nonmoving party. *Corley, supra,* 470 Mich at 278. If the proffered evidence fails to establish a genuine issue of material fact, the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood,* 461 Mich 109, 120; 597 NW2d 817 (1999). Issues concerning the interpretation of a statute are questions of law that we also review de novo. *Dressel v Ameribank,* 468 Mich 557, 561; 664 NW2d 151 (2003).

Plaintiff raises several arguments on appeal, all turning upon the interpretation and application of the veterans' preference act (VPA). " 'The primary goal of statutory interpretation is to give effect to the intent of the Legislature.' " *Title Office, Inc v Van Buren Co Treasurer,* 469 Mich 516, 519; 676 NW2d 207 (2004), quoting *In re MCI Telecom Complaint,* 460 Mich 396, 411; 596 NW2d 164 (1999). In construing a statute, "the [C]ourt must consider the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose." *Morris & Doherty, PC v Lockwood,* 259 Mich App 38, 44; 672 NW2d 884 (2003) (citations omitted). "Unless defined in the statute, every word or phrase of a statute will be ascribed its plain and ordinary mean-

ing." *Robertson v DaimlerChrysler Corp,* 465 Mich 732, 748; 641 NW2d 567 (2002).

"The veterans' preference act was enacted for the purpose of discharging, in a measure, the debt of gratitude the public owes to veterans who have served in the armed services in time of war, by granting them a preference in original employment and retention thereof in public service." *Valentine v McDonald,* 371 Mich 138, 144-145; 123 NW2d 227 (1963). Consistent with that purpose, the act provides, in relevant part:

> In every public department and upon the public works of the state and of every county and municipal corporation thereof honorably discharged veteran [sic] . . . shall be preferred for appointment and employment. Age, loss of limb, or other physical impairment which does not, in fact, incapacitate, shall not be deemed to disqualify them. . . . The applicant shall be of good moral character and shall have been a resident of the state for at least 2 years and of the county in which the office or position is located for at least one year, and possess other requisite qualifications, after credit allowed by the provisions of any civil service laws. [MCL 35.401]

The VPA applies to veterans, like plaintiff, who served in the Vietnam era (see MCL 35.61[j]) and is to be liberally construed. *Abt v Wilcox,* 264 Mich 183, 185; 249 NW 483 (1933).

While the VPA clearly states that veterans shall be given a preference for appointment and employment, it does not describe the nature or strength of the preference. Further, the VPA provides that a veteran is not entitled to the preference unless he or she meets the residency requirements and possesses "other requisite qualifications." However, the VPA neither defines "other requisite qualifications" nor mandates who is responsible for determining what the requisite qualifications are and whether an applicant possesses those

qualifications. This Court, then, must first examine the language of the VPA and determine whether the VPA grants an absolute hiring preference to a veteran who meets the minimum job requirements for a position in public employment (as claimed by plaintiff) or whether the public employer has discretion to hire a better qualified nonveteran over a veteran who possesses the minimum qualifications.

According to *Random House Webster's College Dictionary* (2000),[1] "prefer" means:

> 1. to set or hold before or above other persons or things in estimation; like better: *I prefer school to work.* 2. to give priority to, as to one creditor over another. 3. to put forward or present for consideration or sanction. 4. to put forward or advance, as in rank or office; promote.

Similarly, according to Black's Law Dictionary (8th ed), "prefer" means "to give priority to." Further, *Random House Webster's College Dictionary* defines "requisite" as "required; necessary" and defines "qualification" as "a quality, accomplishment, etc., that fits a person for some function, office, or the like." Under the plain, ordinary meanings of the relevant words in the VPA, defendant had to hold plaintiff above, or give plaintiff priority over, other nonveteran applicants if he possessed the qualities or accomplishments that were required or necessary to fulfill the role of an assistant city attorney.

Plaintiff argues that he does not have to prove his relative qualifications because of amendments of the VPA that have taken place over the years. We disagree. Plaintiff specifically directs this Court's attention to 1923 PA 88, an earlier version of the VPA that provided:

---

[1] This Court may examine dictionary definitions if a statute does not expressly define its terms. *People v Rutledge,* 250 Mich App 1, 6; 645 NW2d 333 (2002).

> That the applicant shall be of good moral character and shall have been a resident of the state for at least two years and of the county in which the office or position is located for at least one year, and possesses other requisite qualifications, *which shall be at least equal to those of other applicants*. [Emphasis added.]

Pursuant to 1939 PA 298, the language requiring that the veteran possess other requisite qualifications "which shall be at least equal to those of other applicants" was deleted and no longer appeared in the statute. By deleting the phrase "which shall be at least equal to those of other applicants," the Legislature arguably evinced its intent that the preference not be triggered only when the veteran's qualifications were equal to the other applicants. See, e.g., *Edgewood Dev, Inc v Landskroener,* 262 Mich App 162, 167-168; 684 NW2d 387 (2004). However, though the Michigan Legislature did not intend for the preference to be triggered only when the veteran's qualifications are equal to or better than a nonveteran's qualifications, this does not mean that the Legislature intended for the VPA to provide an absolute preference, regardless of qualifications.

The Michigan Supreme Court decision in *Patterson v Boron,* 153 Mich 313; 116 NW 1083 (1908), proves instructive on this issue. In *Patterson,* the plaintiff, an honorably discharged Union soldier, sought a writ of mandamus compelling the defendant mayor to appoint him as a city attorney. The plaintiff based his right to the appointment on the VPA, as set forth in 1907 PA 329:[2]

> "In every public department, and all public departments in all municipal corporations, . . . honorably discharged

---

[2] The language of the VPA at the time of *Patterson* was substantially similar to the current language.

Union soldiers, sailors and marines of the late Rebellion, and . . . the late Spanish-American War shall be preferred for appointment and employment; age, loss of limb or other physical impairment which does not, in fact, incapacitate, shall not be deemed to disqualify them: *Provided, however*, That the applicant . . . shall have been a resident of the State for at least two years and of the county in which the office or position is located for at least one year, and possesses other requisite qualifications." [*Id.* at 313-314, quoting 1907 PA 329, § 1 (alterations added).]

The Court noted that under the act, "discharged Union soldiers are not entitled to an appointment unless they possess the other requisite qualifications." *Id.* at 314. The mayor refused to appoint the plaintiff to the position of city attorney because, in his estimation, the plaintiff did not possess the requisite qualifications for the position. *Id.* On appeal, the issue before our Supreme Court was whether the mayor had the right to make that determination. The Court noted that the mayor had the authority to appoint the city attorney and was likewise authorized to refuse to appoint the plaintiff as city attorney:

This right to appoint imposed on respondent the duty of determining that his appointee possessed the requisite qualifications for the office. He would have been faithless to that duty had he appointed an applicant whom he deemed disqualified. The law therefore made it his duty to determine whether relator—an applicant for the office— possessed the requisite qualifications, and no law authorizes a court to review his determination that relator lacked such qualifications. It must therefore be held that relator is not entitled to the appointment in question because it has been authoritatively determined that he does not possess the requisite qualifications therefor. [*Id.* at 314-315.]

In *Patterson*, then, our Supreme Court clearly held that to be entitled to the veterans' preference, a veteran

must possess the requisite qualifications for the position, as determined by the hiring authority.

Here, the city of Ann Arbor granted defendant the authority to appoint assistant city attorneys.[3] As in *Patterson,* the right to appoint assistant city attorneys imposes on defendant the duty to determine that the applicants who are hired possess the requisite qualifications for the office. Today we reaffirm the principle set forth in *Patterson* and hold that notwithstanding the VPA, a hiring authority is authorized to refuse to hire a veteran if, in the authority's estimation, the veteran did not possess the requisite qualifications for the position.

We further clarify that the veteran's preference is not absolute. Although the veteran's qualifications need not be *equal* to the qualifications of a nonveteran to trigger the preference, his or her qualifications must be at least *comparable.* Other jurisdictions have applied their respective veterans' preference acts in a similar fashion.[4] For example, Pennsylvania's Veterans' Preference Act (PaVPA), like the VPA, confers a preference on those who meet certain established criteria: the applicant must be a veteran, must be honorably discharged, and must possess the other requisite qualifications to satisfactorily perform all the duties that the position requires. 51 Pa Cons Stat Ann 7101 *et seq.*

In *Merrell v Chartiers Valley School Dist,* 579 Pa 97; 855 A2d 713 (2004), the Pennsylvania Supreme Court held that the PaVPA essentially provides for a tie-

---

[3] Section 5.2 of the charter for the city of Ann Arbor specifically provides that the city attorney may delegate one or more duties to an assistant *"who shall be appointed by the Attorney . . . ."* (Emphasis added.)

[4] Lacking guidance under Michigan law, we may look to other states' case law interpreting similar statutes. *In re Turpening Estate,* 258 Mich App 464, 466; 671 NW2d 567 (2003).

breaking preference for candidates with comparable qualifications and, therefore, the preference does not ripen until the veteran can establish the requisite qualifications for the position. *Merrell, supra,* 579 Pa at 111-112. According to the *Merrell* court, the purpose of the PaVPA "is not to place veterans in a better position than other applicants simply because they are veterans . . . but to provide a preference in the final selection process among candidates of comparable quality." *Merrell, supra,* 579 Pa at 112. In *Brickhouse v Spring-Ford Area School Dist,* 540 Pa 176; 656 A2d 483 (1995), the Pennsylvania Supreme Court further recognized that, while it was lawful to prefer veterans in employment, " 'there must be some reasonable relation between the basis of preference and the object to be obtained, the preference of veterans for the proper performance of public duties.' " *Brickhouse, supra,* 540 Pa at 181-182, quoting *Commonwealth ex rel Graham v Schmid,* 333 Pa 568, 573; 3 A2d 701 (1938). See also *Gossage v State,* 112 Wash App 412, 422; 49 P3d 927 (2002) (argument that veterans' preference is absolute ignores that the preference requires that the applying veteran possess the capacity necessary to discharge the duties of the position involved).

We find the logic employed by the Pennsylvania Supreme Court persuasive and sound. Public employers should not be required to hire veterans who meet the bare minimum job qualifications if they do not believe the veteran is, in fact, qualified for the position or believe that the veteran does not possess the requisite experience. In this particular matter, hiring an assistant city attorney who does not possess the qualities found necessary by defendant could undermine the integrity of the position and have an undesirable impact on Ann Arbor residents who rely on the city attorney's office to perform at a particular level of expertise so as to best serve the public's interests. To grant an absolute

preference to veterans, then, would be to ignore the consequences of hiring unqualified persons in public employment.

In sum, although the veteran's qualifications need not be equal to the qualifications of a nonveteran to trigger the preference, the veteran's qualifications must be at least comparable in the estimation of the hiring authority. The veteran's preference, then, does not ripen until the veteran can establish that he or she possesses the requisite qualifications for the position, and the VPA does not preclude a public employer from hiring a nonveteran applicant if the employer reasonably believes that the nonveteran applicant is substantially better qualified than the veteran.

Plaintiff's argument that defendant was obligated to hire him because he possessed the "must-have" qualifications posted in the job notice thus fails. Although those qualifications may have established plaintiff's eligibility to be considered for the position, those qualifications did not establish that he was "qualified" for the job. The minimum requirements are very basic (licensed to practice law in Michigan; two years' experience as an attorney; good research, writing, and oral advocacy skills; work well independently and learn quickly; familiarity with computer-based legal research and computer programs); therefore, to follow plaintiff's logic would leave defendant absolutely no discretion to consider specific experience or expertise that may be required to adequately perform the job. Again, defendant was given the discretion (and, indeed, had a duty according to *Patterson*) to set the requisite qualifications for a position and determine whether the candidates possessed such qualifications. Absent this discretion, and under plaintiff's reading of the VPA, any other

part of the hiring process (interview, background check, etc.) would be rendered pointless, as once a veteran applicant met the bare minimum requirements, the hiring body would be compelled to hire the veteran and the hiring process would effectively cease. This would clearly be inconsistent with the policies and purposes behind the VPA.

The above being true, this Court turns its attention to whether plaintiff possessed the required qualifications for the position of assistant city attorney and whether his qualifications were comparable to those of the other applicants. The posting for the job of assistant city attorney read as follows:

> *JOB SUMMARY* The Assistant City Attorney is a staff attorney in the City Attorney's Office and serves as Attorney for the City. Specific assignments and other duties depend on the attorney's skills and the needs of the office, but will include review of legal documents, written and oral advice on a variety of legal issues, and representation of the City in court and/or administrative proceedings. This is a full-time position, however part-time placement will be considered.

> *EDUCATION AND EXPERIENCE* Min[imum] of two (2) years of experience as an attorney. Experience in municipal law practice preferred. Experience desired in one or more of the following areas of law: collections; tax; planning and zoning; ordinance enforcement or other prosecution or defense experience; litigation; environmental, water and sewer utilities; labor and employment. Experience interacting with and advising public bodies such as boards and commissions desired. Must have good research, writing, oral advocacy, and interpersonal skills, must work well independently, and must be able to learn new areas of law quickly. Must be able to do computer based legal research. Must have some familiarity with and ability to use word processing, database, spreadsheet and other computer programs desirable. Must be licensed to practice law in Michigan.

After submitting his application, plaintiff received correspondence from defendant indicating that he was going to collect and review resumes over the next few months and determine the specific needs of the office.[5] Defendant's affidavit indicates that he ultimately determined that the office required one attorney with experience in labor issues and one with experience in zoning and planning. Moreover, defendant established specific hiring criteria for each position. According to defendant, the minimum qualifications, although not specified in the initial general posting for the positions, were as follows:

*Labor Law Attorney*—significant traditional labor experience with a high level of responsibility in a corporate or municipal setting and experience with arbitration hearings, the National Labor Relations Board and/or the Michigan Employment Relations Commission, labor negotiations, and collective bargaining agreement.

*Zoning and Planning Attorney*—experience with zoning and planning issues, significant involvement with Planning Commission issues, ability to work well with Planning Commission, planning department, and community development staff.

Plaintiff's resume indicates his areas of expertise as including: all areas of real estate and construction law;

---

[5] While plaintiff contends defendant is bound by the wording of the official job posting, he has provided no relevant authority to support such a position. Moreover, plaintiff has failed to direct this Court's attention to any provision in the city's affirmative action plan tending to indicate that defendant must include every possible qualification in a job posting, prohibiting defendant from considering qualifications other than those set forth in the posting, or otherwise restricting the discretion of defendant in hiring assistants. A party may not merely announce its position and leave it to the court to discover and rationalize the basis for its claims, *Wilson v Taylor,* 457 Mich 232, 243; 577 NW2d 100 (1998), "nor may he give issues cursory treatment with little or no citation of supporting authority." *Houghton v Keller,* 256 Mich App 336, 339; 662 NW2d 854 (2003).

general business, including contracts, partnerships, corporations, and limited liability companies; tax law (particularly in the area of real estate); and employment law. While plaintiff's resume indicated that he "[c]ompleted courses and internship in public sector labor law," his application materials did not indicate that he had experience in labor law or zoning and planning law. In light of his application and resume, then, plaintiff did not have the requisite qualifications for either position.

The applicants who were ultimately hired, on the other hand, provided information demonstrating their qualifications for the positions. The applicant hired as a labor attorney, for example, had eight years of experience with Dykema Gossett PLLC representing public and private employers in traditional union matters, and an additional eight years of experience as a manager for labor and employment at DTE Energy and an attorney at Michigan Consolidated Gas Company, where she represented the companies before the National Labor Relations Board and negotiated collective bargaining agreements. The applicant hired for the zoning and planning position demonstrated experience in that area, including having held a position with the Ann Arbor Planning Commission for five years and prior experience with federal housing law.

Defendant was seeking to hire two attorneys to practice in specific areas of the law: labor law and zoning and planning law—not a general lawyer with experience in a multitude of practice areas. Therefore, regardless of plaintiff's experience in other areas of the law, plaintiff's lack of experience in labor law and zoning and planning law is fatal to his claim that his qualifications were comparable to or greater than those of the successful applicants. Because plaintiff failed to establish that he possessed the "other requisite qualifi-

cations" set forth by defendant, he was not entitled to the veterans' preference. In other words, plaintiff failed to demonstrate that he had the ability to perform the job at the level of skill and with the expertise demanded by defendant, the employer, and thus, the preference never ripened. And, because there was no preference for plaintiff to enforce, the trial court properly granted summary disposition in favor of defendant.

The trial court also properly found that plaintiff failed to establish a right to mandamus in this matter. A trial court's decision whether to issue a writ of mandamus is reviewed for an abuse of discretion. *MCI, supra,* 460 Mich at 443. But whether defendant had a clear legal duty to perform and whether plaintiff had a clear legal right to the performance of that duty, thereby satisfying the first two steps in the test for assessing the propriety of a writ of mandamus, are questions of law, which this Court reviews de novo. *Tuggle v Dep't of State Police,* 269 Mich App 657, 667; 712 NW2d 750 (2006), citing *Citizens for Protection of Marriage v Bd of State Canvassers,* 263 Mich App 487, 491-492; 688 NW2d 538 (2004). Moreover, an underlying issue of statutory interpretation is a question of law that is reviewed de novo on appeal. *MCI, supra,* 460 Mich at 443.

In *Vorva v Plymouth-Canton Community School Dist,* 230 Mich App 651, 655; 584 NW2d 743 (1998), this Court explained that the issuance of a writ of mandamus is only proper where:

> (1) the plaintiff has a clear legal right to performance of the specific duty sought to be compelled, (2) the defendant has the clear legal duty to perform such act, and (3) the act is ministerial, involving no exercise of discretion or judgment. *Bingo Coalition for Charity—Not Politics v Bd of State Canvassers,* 215 Mich App 405, 413; 546 NW2d 637 (1996). Mandamus is an extraordinary remedy that may lie

to compel the exercise of discretion, but not to compel its exercise in a particular manner. *Teasel v Dep't of Mental Health,* 419 Mich 390, 409-410; 355 NW2d 75 (1984).

Plaintiff bears "the burden of demonstrating entitlement to the extraordinary remedy of a writ of mandamus." *Citizens for Marriage, supra,* 263 Mich App at 492.

The VPA provides:

> In case the application of any such soldier, sailor or marine, shall be rejected by the person having the power of appointment to the position for which he has applied, he shall be entitled to remedy therefor by mandamus to enforce the provisions of this act. [MCL 35.404.]

Applying *Vorva* to the facts of this case, plaintiff failed to demonstrate that he was entitled to a writ of mandamus. First, plaintiff failed to establish that he had a clear legal right to be hired by defendant. As discussed above, he failed to demonstrate that he possessed the requisite qualifications for the position and, therefore, he had no right to further consideration by defendant. Second, defendant did not have a clear legal duty to hire plaintiff. He did not have a duty to hire any individual who he determined did not have the ability to perform the job at the level of skill and with the expertise demanded by defendant. Third, and most important, plaintiff failed to establish that the act of hiring an assistant city attorney was a ministerial task. An act is ministerial in nature if it is " 'prescribed and defined by law with such precision and certainty as to leave nothing to the exercise of discretion or judgment.' " *Beadling v Governor,* 106 Mich App 530, 533; 308 NW2d 269 (1981), quoting *Oakland Schools Bd of Ed v Superintendent of Pub Instruction,* 401 Mich 37, 43-44; 257 NW2d 73 (1977).

In support of his contention that the act of hiring an assistant city attorney is a ministerial task, plaintiff cites *McMullen v Saginaw City Manager,* 300 Mich 166; 1 NW2d 494 (1942). In *McMullen,* the trial court issued a writ of mandamus requiring the managing officer of the city to appoint two civil service commissioners to regulate the employment of members of the city fire department. *Id.* at 167. Under a public act adopted and made operative in that city, the civil service commission was to consist of three members, two of whom were to be appointed by the person or group acting as a mayor, city manager, council, or common council. *Id.* at 169. The other member was to be selected by the paid members of the fire department. *Id.* The paid members of the fire department made their selection, but the city manager, by refusing to appoint the other two members of the commission, prevented operation of the act. *Id.* The city appealed the issuance of the writ arguing, among other things, that the writ "abridge[d] the right of municipal home rule." *Id.* at 168. Our Supreme Court held that the writ was properly issued because the act was operative in the city and the act "command[ed] appointment of commissioners by the city." *Id.* at 169-170.

*McMullen* is clearly distinguishable from the case at hand. The act in *McMullen* required the managing officer to appoint two commissioners—an action that was mandatory and, thus, ministerial. The writ of mandamus did not, however, require appointment of any specific individuals (a decision presumably left to the discretion of the managing officer) but rather required simply that commissioners be appointed as required by the operative act.

In the instant case, neither the Ann Arbor charter nor the VPA required defendant to hire any assistant

city attorneys at all. Instead, defendant had the discretion to hire the assistant city attorneys. Moreover, the writ sought by plaintiff was for appointment of himself, a specific individual, as assistant city attorney. The choice of an assistant, however, was discretionary. See, e.g., *Patterson, supra,* 153 Mich at 314-315.

The remaining cases cited by plaintiff for the proposition that the appointment of an assistant city attorney is a ministerial task are similarly distinguishable. As in *McMullen, People ex rel Attorney General v Detroit Common Council,* 29 Mich 108 (1874) involved a writ compelling the council to act on a clear legal duty (by considering nominations made by the mayor to establish a board of public works). *Meiland v Wayne Probate Judge,* 359 Mich 78; 101 NW2d 336 (1960), also cited by plaintiff, involved the reinstatement of an employee in a civil service position that he was clearly qualified to occupy. The ultimate decision in *Meiland* was based on civil service rules, which are not applicable in this case.

A writ of mandamus is not appropriate when the act that the plaintiff seeks to compel the defendant to perform is a discretionary one. See *Tuscola Co Abstract Co, Inc v Tuscola Co Register of Deeds,* 206 Mich App 508, 512; 522 NW2d 686 (1994) ("mandamus was inappropriate, because defendant's actions involved the exercise of discretion vested in a public official"). Because the hiring of assistant city attorneys is discretionary, and because plaintiff failed to establish that he had a clear legal right to be hired by defendant or that defendant had a clear legal duty to hire plaintiff, the writ of mandamus was properly denied.

Affirmed.