*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MACOMB COUNTY PROSECUTOR,

        Plaintiff,

v

MACOMB COUNTY EXECUTIVE and COUNTY OF MACOMB,

        Defendants.

FOR PUBLICATION
March 31, 2022
9:15 a.m.

No. 359887

Before: RIORDAN, P.J., and MARKEY and CAMERON, JJ.

PER CURIAM.

In this case, plaintiff Macomb County Prosecutor, Peter Lucido, seeks to invoke our original jurisdiction under MCL 141.438(7) of the Uniform Budgeting and Accounting Act (UBAA), MCL 141.421 *et seq*., and obtain an order directing defendant Macomb County Executive, Mark Hackel ("defendant Hackel"), to disburse certain appropriated funds by the Macomb County Board of Commissioners ("the Board").

Plaintiff argues that the Board is permitted to adopt a budget that differs from the one recommended by defendant Hackel and that defendants do not have the authority to impound the funds which plaintiff seeks. Defendants argue that this Court does not have original jurisdiction under MCL 141.438(7), and relatedly, that plaintiff does not have standing to bring the instant action. Predictably, defendants also argue that defendant Hackel has the authority to impound the funds which plaintiff seeks. For the reasons set forth, we conclude, first, that this Court has original jurisdiction over the instant action and that plaintiff has standing. We further conclude that although defendant Hackel has limited authority to impound appropriated funds, he exceeded the scope of that authority here. Accordingly, we grant plaintiff's request for declaratory relief and a writ of mandamus.

## I. BACKGROUND

The relevant facts are undisputed. In January 2021, plaintiff requested approximately $900,000 from defendant Hackel to fund several new employees within the prosecutor's office. Defendant Hackel denied plaintiff's request. Then, in September 2021, defendant Hackel

proposed a recommended budget for 2022 that included funding for nine new employees within the prosecutor's office. Plaintiff prosecutor, however, wanted more. He requested that the Board bypass defendant Hackel's proposed budget and approve funding for the six additional positions he wanted.

The parties' funding disagreement stems from their differing interpretations of the Macomb County Charter ("County Charter") and related statutes. This lawsuit involves a dispute over $299,300 appropriated by the Board for four additional positions within the prosecutor's office— a communications director, executive assistant, an intern coordinator, and a part-time file clerk.

According to the minutes of the Board's November 16, 2021 meeting, the Board voted to amend defendant Hackel's recommended budget and include funding for these four new employee positions in the prosecutor's office:

> **Motion to amend the 2022 proposed Prosecutor's Office budget to increase the Personnel line item by $127,000 (Add Communications Director).**
>
> **THE MOTION PASSED.**
>
> * * *
>
> **Motion to amend the 2022 proposed Prosecutor's Office budget to increase the Personnel line item by approximately $127,200 (Add Executive Assistant).**
>
> **THE MOTION PASSED.**
>
> * * *
>
> **Motion to amend the 2022 proposed budget to increase the Prosecutor's Office Personnel line item by approximately $23,100 (Add Intern Coordinator).**
>
> **THE MOTION PASSED.**
>
> * * *
>
> **Motion to amend the 2022 proposed budget to increase the Prosecutor's Office Personnel line item by approximately $21,800 (Part Time File Clerk).**
>
> **THE MOTION PASSED.**

In other words, while the recommended budget of defendant Hackel included funding for a total of nine additional employees within the prosecutor's office, the budget approved by the Board through the county's appropriations ordinance[1] included funding for a total of 13 additional employees within that office, four more than included in defendant Hackel's proposed budget.

---

[1] An appropriations ordinance generally grants a governmental entity the authority to allocate money for specific spending activities.

The approved budget ultimately reflected a line item of $11,828,100 for personnel within the prosecutor's office, which was $299,300 more than the $11,528,800 that defendant Hackel proposed. Even so, defendant Hackel did not exercise his line-item veto over the appropriation.

Six days after the Board approved the 2022 budget, defendant Hackel sent a letter to the Board that under County Charter § 6.6.4, any approved budget was subject to the recommendation of the Executive. Thus, defendant Hackel clearly implied that because he did not recommend funding for a communications director, executive assistant, intern coordinator, and part-time file clerk in the prosecutor's office, he would not disburse any funds for those employee positions.[2]

On January 11, 2022, plaintiff filed his original action in this Court against defendants under MCL 141.438(7) of the UBAA. Plaintiff alleges in his complaint that "[u]nder the terms and provisions of the County Charter and [s]tate [l]aw, Plaintiff has the power and discretion to expend funds appropriated by the Board of Commissioners for the Prosecuting Attorney, without interference by Defendant Executive." Plaintiff seeks a declaratory judgment, a writ of mandamus, and an injunction to that effect. Plaintiff also moved for immediate consideration and summary disposition.

In response, defendants moved to dismiss this case, arguing that this Court does not have original jurisdiction under MCL 141.438(7), and relatedly, that plaintiff does not have standing. Defendants further argued that the County Charter does not authorize the Board to adopt a budget different from that which the Executive recommended. Alternatively, defendants argue that defendant Hackel has the discretionary authority to impound the appropriated funds at issue.

On February 14, 2022, we granted the motion for immediate consideration, imposed an expedited briefing schedule, and ordered that "[p]ursuant to MCR 7.206(D)(4), this matter will be submitted for decision on the briefs filed without oral argument." *Macomb Co Pros v Macomb Co Exec*, unpublished order of the Court of Appeals, entered February 14, 2022 (Docket No. 359887).

Having carefully considered the materials filed by the parties, as well as the amicus brief filed by the Board in support of plaintiff, we now render this decision.

## II. DISCUSSION

### A. JURISDICTION AND STANDING

Defendants first argue that this Court does not have original jurisdiction over the instant action pursuant to MCL 141.438(7), and relatedly, that plaintiff does not have standing under that statute. We disagree.

---

[2] When an executive official declines to disburse funds appropriated by the legislative body, an "impoundment of appropriated funds" has occurred. See, e.g., Church, *Impoundment of Appropriated Funds: The Decline of Congressional Control Over Executive Discretion*, 22 Stan L Rev 1240, 1241 (1970).

"Jurisdiction, when applied to courts, is the power to hear and determine a cause or matter." *Bowie v Arder*, 441 Mich 23, 36; 490 NW2d 568 (1992) (quotation marks and citation omitted). "[T]he jurisdiction of the Court of Appeals is entirely statutory." *People v Milton*, 393 Mich 234, 245; 244 NW2d 266 (1974). On the other hand, "the standing inquiry focuses on whether a litigant is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010) (quotation marks and citation omitted) (*LSEA*). "[A] litigant has standing whenever there is a legal cause of action." *Id*. at 372.

"Charter counties are subject to restrictions that are imposed by general law." *Hackel v Macomb Co Comm'n*, 298 Mich App 311, 328; 826 NW2d 753 (2012). Some of those restrictions are imposed by the UBAA. See *id*. at 328-329. MCL 141.438 of the UBAA provides, in relevant part, as follows:

> (5) The enforcement of a general appropriations act approved by the legislative body of a county is a power vested in the chief administrative officer of that county.

> (6) An elected official who heads a branch of county government or the chief judge of a court funded by a county has standing to bring suit against the chief administrative officer of that county concerning an action relating to the enforcement of a general appropriations act for that branch of county government or that court. . . .

> (7) Except as otherwise provided in subsection (8) and notwithstanding any provision of law to the contrary, any suit brought under subsection (6) or [MCL 141.436(9)] shall only be brought in the Michigan court of appeals within 60 days after 1 of the following:

> (a) The adoption of a general appropriations act. . . .

> * * *

> (10) The jurisdiction of the court of appeals over a suit brought under subsection (6) or [MCL 141.436(9)] is exclusive and that jurisdiction or any judicial duties inherent in that jurisdiction shall not be transferred to any other court. . . .

In this case, plaintiff alleges that defendant Hackel failed to "enforce" the general appropriations act[3] adopted by the Board by impounding funds appropriated to the prosecutor's

---

[3] MCL 141.422c(2) defines "general appropriations act" as "the budget as adopted by the legislative body or as otherwise given legal effect pursuant to a charter provision in effect on the effective date of this section." The appropriations ordinance here is the "general appropriations act."

office, thereby violating MCL 141.438(5). Plaintiff is seeking to compel defendant Hackel to "enforce" the general appropriations act pursuant to MCL 141.438(6).

There is no dispute that plaintiff satisfied the 60-day requirement set forth in MCL 141.438(7)(a) and that MCL 141.438(8) and MCL 141.436(9) do not otherwise govern this action. Thus, the issue before us concerns the first sentence of MCL 141.438(6), specifically, whether plaintiff is "[a]n elected official who heads a branch of county government." According to defendants, plaintiff is an "elected official" but not the head of "a branch of county government" because the word "branch" only contemplates the legislative, executive, and judicial branches of county government, and the "department of prosecuting attorney" is not one of those three commonly recognized branches. Thus, defendants argue, this Court lacks original jurisdiction under MCL 141.438(7) to entertain the instant action because it was not maintained by "[a]n elected official who heads a branch of county government" under MCL 141.438(6). Relatedly, defendants argue that plaintiff lacks standing because MCL 141.438(6) only confers standing upon "[a]n elected official who heads a branch of county government."

Plaintiff responds that the word "branch" does not refer to the three commonly recognized branches of government in our state's separation-of-powers system but instead refers more broadly to any discrete division of county government. See *Black's Law Dictionary* (Deluxe 10th ed.) (defining "branch," in relevant part, as "[a]n offshoot, lateral extension, or division of an institution"). We agree with plaintiff.

We acknowledge, of course, that the separation of powers of our State's Constitution provides that "[t]he powers of government are divided into three branches: legislative, executive and judicial." Const 1963, art 3, § 2. However, in contrast, as our Supreme Court recognizes, "[m]unicipal government in Michigan typically has not been divided among three branches of government." *Rental Prop Owners Ass'n of Kent Co v City of Grand Rapids*, 455 Mich 246, 267; 566 NW2d 514 (1997).[4] Thus, for example, "legislative bodies of local governments may also exercise executive powers." *Id*. at 268. In addition, although municipalities may exercise quasi-judicial functions such as those exercised by administrative tribunals, see *id*., "the judicial power of the state is vested exclusively in one court of justice," Const 1963, art 6, § 1. Defendants cite no authority for the proposition that a municipality in Michigan may establish its own judicial branch of government, and we would find such a suggestion quite unusual.[5] Accordingly, given that the three-branch system of state government does not apply to municipal government, we

---

[4] We previously have recognized that the constitutional separation-of-powers doctrine does not apply to county government, but only to state government. *Hackel*, 298 Mich App at 327. It is county charters that dictate the separation of powers in county government. *Id*.

[5] Defendants argue that the Macomb Circuit Court is the judicial branch of Macomb County. This is incorrect. "[T]he judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, [and] one trial court of general jurisdiction known as the circuit court . . . ." Const 1963, art 6, § 1. Thus, the Macomb Circuit Court is part of the state judiciary. Although theoretically a county might be allowed to establish its own shadow judicial system, we cannot easily recall an instance in which that occurred.

-5-

decline to interpret "a branch of county government" as contemplating those three branches, as defendants would like us to do. Instead, we give the word "branch" in this context its particular legal meaning.[6] Namely, that a "branch" is "[a]n offshoot, lateral extension, or division of an institution." *Black's Law Dictionary* (Deluxe 10th ed.).

We emphasize that accepting defendants' interpretation of "a branch of county government" in MCL 141.438(6) would lead to a strained outcome. To illustrate the point, consider the meaning of the language at issue if it referred only to municipal analogues of the three branches of state government. With regard to the judicial branch, as noted, Michigan counties, to the best of our knowledge, have not established such branches. Nor does there appear to be any legal authority for them to do so. Thus, "a branch of county government" cannot refer to a judicial branch of county government. With regard to the executive branch, "[a]n elected official who heads [the executive branch] of county government" would necessarily be the "chief administrative officer." See MCL 141.422b(3)(f) (defining "chief administrative officer" as including "[t]he elected county executive"). If "a branch of county government" referred to the executive branch, then MCL 141.438(6) would authorize the county executive to sue himself or herself. This is a nonsensical outcome. Thus "a branch of county government" cannot refer to the executive branch.

With regard to the legislative branch, we question whether that branch has a singular "head" as opposed to being a collective policymaking body. Regardless, the UBAA elsewhere refers to "the legislative body" of a municipality, see, e.g., MCL 141.438(1), so it would be inconsistent with ordinary principles of statutory interpretation to conclude that "a branch of county government" exclusively means the legislative body of that county. See *Denton v Dep't of Treas*, 317 Mich App 303, 312; 894 NW2d 694 (2016) ("When the Legislature uses different words, the words are generally intended to connote different meanings.") (quotation marks and citation omitted).

For these reasons, we conclude that "a branch of county government" refers to an offshoot, lateral extension, or division of county government. The prosecutor's office, which is a department of Macomb County, unquestionably is a division of county government. Therefore, we further conclude plaintiff is the "elected official who heads a branch of county government" for the purposes of MCL 141.438(6).

In light of this conclusion, our resolution of the jurisdictional and standing questions is straightforward. With regard to the jurisdictional question, because plaintiff is the "elected official who heads a branch of county government" under MCL 141.438(6), and because we can identify no other respect in which that statute might not have been satisfied, we conclude that this Court has original jurisdiction under MCL 141.438(7). With regard to the standing question, plaintiff has standing because our Legislature has created a legal cause of action for a municipal official in

---

[6] See MCL 8.3a ("[T]echnical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.").

his position.  See *LSEA*, 487 Mich at 355.[7]  In other words, by enacting MCL 141.438, the Legislature created a cause of action for "[a]n elected official who heads a branch of county government" to pursue judicial "enforcement of a general appropriations act for that branch of county government."[8]

Therefore, this Court has original jurisdiction over the instant action and plaintiff has standing to bring this action.[9]

## B.  AUTHORITY TO ADOPT AN INDEPENDENT BUDGET

We next turn to the merits of the case.  Defendants argue that the County Charter provides that any approved budget is subject to the disbursement amounts contained in the proposed, recommended budget of the Executive.  As such, defendants reason that the Board is without authority to appropriate more funds for a line item than that contained in the Executive's proposed budget.[10]  Therefore, defendants argue, the Board simply lacked the authority to increase the line-

---

[7] We note, by analogy, that in *Train v City of New York*, 420 US 35; 95 S Ct 839; 43 L Ed 2d 1 (1975), the United States Supreme Court affirmed an order of the lower court directing the Administrator of the United States Environmental Protection Agency to disburse funds appropriated by Congress for municipal sewage treatment.  Although standing was not discussed in that decision, the fact that the City of New York, a municipal executive branch, was not questioned as a proper litigant in a federal action suggests that the putative recipient of appropriated funds has standing to compel their disbursement.  Thus, if the City of New York had Article III standing, it follows that plaintiff has standing here, given that the state constitution is typically irrelevant in determining whether a litigant has standing in the type of action before us. See *LSEA*, 487 Mich at 372.

[8] Defendants argue that plaintiff does not "head[] a branch of county government" under MCL 141.438(6) because the County Charter only refers to the Board and the Executive as respective branches.  This argument misses the mark for multiple reasons, one of which is the fact that we are unaware of any authority indicating that a municipal charter can rewrite statutory language.  In other words, our task is to determine the meaning of MCL 141.438(6) as written by the Legislature, not determine the meaning of MCL 141.438(6) as written by the Legislature *and* as modified by the County Charter.  To illustrate, we would have little difficulty concluding that defendant Hackel is the true "elected county executive" and "chief administrative officer" for the purposes of the UBAA, see MCL 141.422b(3)(f), even if the County Charter decided to give those titles to any temporary intern working for the county rather than the person occupying the position that performs the duties of the office, such as defendant Hackel.

[9] Having so concluded, we need not reach plaintiff's alternate argument that this Court has jurisdiction under MCL 600.4401(1).  Further, for the reasons explained herein, defendants' motion to dismiss for lack of jurisdiction and standing is denied.  We note that defendants do not argue that Macomb County should be dismissed as a party even if this Court has original jurisdiction over the instant action and plaintiff has standing.

[10] It is unclear whether defendants' position is that the Board is required to essentially perform a ministerial task and approve whatever budget is recommended by the Executive, whether the

-7-

item appropriation for personnel within the prosecutor's office beyond the amount reflected in the Executive's proposed budget.[11]  We disagree with defendants.

County Charter § 3.5(j) provides that the Executive[12] has the authority to "[s]ubmit to the Commission a proposed annual budget."  In addition, § 3.9 specifically provides the Executive with a line-item veto over appropriations:

> Unless prohibited by law, the Executive may veto an ordinance, a line item of an ordinance appropriating money, or a resolution having the effect of law or approving a contract, by transmitting to the Commission notice of the veto and reasons for the veto.  If the Executive fails to exercise the veto within 10 business days after receipt of the ordinance by the Executive . . . the action of the Commission takes effect.

Sections 4.4(a) and (c) provide that the Board has the authority to, respectively, "[a]dopt, amend, or repeal ordinances or resolutions" and "[a]ppropriate funds, levy taxes, fees, and other charges."  However, § 6.6.4(c) provides that "[t]he existence, organization, qualifications, powers, and duties of the Countywide Elected Officials and [certain] departments . . . shall be subject to . . . [a]ll personnel, budgeting, and expenditure recommendations of the Executive as approved by the Commission."

Article VIII of the County Charter governs the financial management of the county.  Section 8.6.1 provides as follows:

> The Executive shall prepare and administer a comprehensive balanced budget in a manner which assures coordination among Agencies.  The Executive shall transmit the comprehensive balanced budget for the next fiscal year to the Commission at least 90 days before the next fiscal year begins.  The comprehensive balanced budget prepared and recommended by the Executive shall contain, at a minimum, the budget message, budget document, the proposed appropriations ordinance containing the information required by law, and any information required by the Commission, law, or ordinance.

Section 8.7, which is titled "Adoption of Line Item Operating Budget," provides as follows:

---

Board is able to appropriate less funds for a line item than reflected in the recommended budget itself, or whether the Board merely has the authority to approve or disapprove line items within the recommended budget.

[11] Defendants briefly suggest that under the UBAA, the Board is not authorized to adopt a budget that is different from the proposed budget.  However, defendants do not elaborate on this argument, and we therefore consider it waived.  See *People v Cameron*, 319 Mich App 215, 232; 900 NW2d 658 (2017).

[12] County Charter § 1.4(*l*) defines "Executive" as "the person holding the office of County Executive created by this Charter."

Before the beginning of each fiscal year of the County, the Commission shall adopt a balanced line item operating budget and an appropriations ordinance in accordance with the requirements of law.

We conclude that these provisions of the County Charter allow the Board to appropriate more funds for a line item than reflected in the recommended budget itself. Specifically, § 3.9 gives the authority to the Executive to veto "a line item of an ordinance appropriating money." If the Board was not permitted to appropriate more funds for a line item than specified in the recommended budget itself, then the authority to exercise a line-item veto would be completely redundant. A line-item veto never would be exercised because the Board would never be able to appropriate the undesired funds, from the perspective of the Executive, because it would be solely within the Executive's discretion as to the exact amount of funds allocated.

Moreover, the County Charter includes at least two provisions indicating that the Board bears primary responsibility for the final budget. Section 4.4(c) provides that the Board has the authority to "[a]ppropriate funds," and § 8.7 provides that the Board "shall adopt a balanced line item operating budget and an appropriations ordinance" each fiscal year. In contrast to the authority of the Board, the County Charter only confers the authority upon the Executive to submit "a *proposed* annual budget," § 3.5(j), and submit a budget "*recommended* by the Executive," § 8.6.1. The latter section also refers to a "*proposed* appropriations ordinance." The use of such tentative language as "proposed" and "recommended" indicates that the Executive does not have unilateral power to impose a final budget. Simply put, the County Charter creates a scheme whereby the budgetary process is initiated by the Executive through issuance of a recommended budget, and then the Board has the final authority to appropriate funds—subject, of course, to the veto power of the Executive.

We acknowledge that § 6.6.4(c) provides that "[t]he existence, organization, qualifications, powers, and duties of the Countywide Elected Officials and departments created by this Article," including plaintiff himself and the Macomb County Prosecutor's Office, "shall be subject to . . . [a]ll personnel, budgeting, and expenditure recommendations of the Executive as approved by the Commission." We do not believe, however, that this provision is a limitation on the Board's discretion to appropriate funds in a different manner than recommended by the Executive. Rather, it reflects the fact that budgets in Macomb County are initiated by the Executive in the first instance, see §§ 3.5(j) and 8.6.1, and then ultimately approved, modified, or disapproved by the Board, see §§ 4.4(c) and 8.7.

For these reasons, we conclude that the County Charter allows the Board to appropriate more funds for a line item than reflected in the recommended budget itself. Therefore, the Board did not exceed its authority by appropriating $11,828,100 for personnel to the prosecutor's office.

## C. AUTHORITY TO IMPOUND APPROPRIATED FUNDS

Plaintiff argues that the County Charter does not authorize defendant Hackel to impound appropriated funds, while defendants argue that such authority is found in the Charter and the appropriations ordinance. We conclude that defendant Hackel has limited authority to impound appropriated funds but that he has exceeded that authority in this instance.

In *Detroit Fire Fighters Ass'n v City of Detroit*, 449 Mich 629; 537 NW2d 436 (1995), our Supreme Court considered whether the mayor of Detroit had the authority under the UBAA or the Detroit City Charter to impound funds appropriated by the Detroit City Council for an additional fire squad. CHIEF JUSTICE CAVANAGH concurred in part and dissented in part of that decision. In Section IV of the portion of the opinion he authored, which is binding on this Court,[13] he concluded that the mayor "exceeded his executive discretionary power when he refused to spend any of the appropriated funds." *Id*. at 661 (CAVANAGH, C.J., *concurring in part and dissenting in part*). Section IV first noted that it cannot be "seriously dispute[d] that an appropriation is not a mandate to the executive branch to spend the full appropriation. Additionally, the executive branch certainly has inherent discretion, if not a duty, to seek economic savings." *Id*. at 658. However, Section IV noted, "this executive discretion may not extend so far as to usurp legislative authority. Adopting a budget is a legislative function." *Id*. Section IV then set forth the following test for determining whether the municipal executive official has exceeded his executive discretion to impound appropriated funds:

> The UBAA provides:
>
>> "Appropriation" means an authorization granted by a legislative body to incur obligations and to expend public funds for a stated purpose. [MCL 141.422a(3).]
>
> I think our solution lies with the "stated purpose" objective of an appropriation. If the executive branch has substantially accomplished the stated purpose, then it has legally operated within executive discretionary authority when it economically saved money by not spending the full amount. In other words, the mayor secured a "better deal," or the project did not cost as much as expected. However, if the effect of the "not spending" frustrated or thwarted the stated purpose, then the executive branch has not executed or implemented a legislative authorization. Instead, it has unilaterally adopted its own budget by deviating from, if not ignoring, the council's budget. This it cannot do. [*Id*. at 659-660.]

---

[13] Section IV is binding precedent upon this Court. See *People v Ackley*, __ Mich App __, __; __ NW2d __ (2021) (Docket No. 336063); slip op at 3 n 2 ("In cases where there is no majority opinion, any proposition or reasoning agreed to by a majority of the justices, in any combination, is binding precedent as to that narrow point of agreement."). The issue that was the subject of Section IV was the authority of the mayor to impound the appropriated funds at issue, and the reasoning reflected therein had the support of JUSTICE BOYLE, who signed his separate opinion in its entirety, and JUSTICES RILEY and BRICKLEY, who expressly agreed with its reasoning. See *Detroit Fire Fighters Ass'n*, 449 Mich at 650 (RILEY, J., *concurring*) ("For the reasons articulated in the opinions of JUSTICES WEAVER and CAVANAGH, I would find that the mayor cannot unilaterally impound an appropriation if to do so would frustrate the intent of the appropriation.").

Lastly, Section IV concluded that the mayor's impoundment of the appropriated funds at issue violated both MCL 141.437 of the UBAA[14] and Detroit Charter §§ 8–210, 8–211 because both the statute and the charter "require[] joint action of the mayor and of the city council" for "a postadoption amendment of the budget." *Id*. at 660.

Here, plaintiff does not explicitly argue that defendant Hackel violated MCL 141.437 of the UBAA by impounding the appropriated funds at issue without there being an amendment of the Board's act appropriating the funds. We therefore consider this argument waived to the extent that plaintiff intended to raise it. See *People v Cameron*, 319 Mich App 215, 232; 900 NW2d 658 (2017). Specifically, plaintiff only argues that defendant Hackel violated the County Charter by impounding the appropriated funds at issue. Even so, to resolve that argument, we must consider the pertinent provisions of the County Charter, within the framework of *Detroit Fire Fighters Ass'n*, outlined above, as guidance.

There, Section IV concluded that the mayor's impoundment of appropriated funds violated Detroit Charter §§ 8–210, 8–211, which provided as follows:

Sec. 8–210. Amendments after adoption.

1. If during the fiscal year the mayor advises the city council that there are available for appropriation revenues in excess of those estimated in the budget, the city council may make supplemental appropriations for the year up to the amount of the excess.

2. To meet a public emergency affecting life, health, property or the public peace, the city council may make emergency appropriations. To the extent that there are no available unappropriated revenues to meet those appropriations, the city council may authorize the issuance of emergency notes as provided by law, this Charter or ordinance.

Sec. 8–211. Transfer of appropriations.

At any time during the fiscal year upon written request by the mayor, the city council may, by resolution, transfer all or part of any unencumbered appropriation balance among the programs, services or activities within an agency

---

[14] MCL 141.437(1) provides that "a deviation from the original general appropriations act shall not be made without amending the general appropriations act," and that such an amendment is performed by "the legislative body of the local unit." MCL 141.437(2) provides that "[i]f, during a fiscal year, it appears to the chief administrative officer . . . that the actual and probable revenues from taxes and other sources in a fund are less than the estimated revenues, . . . the chief administrative officer or fiscal officer shall present to the legislative body recommendations which, if adopted, would prevent expenditures from exceeding available revenues for that current fiscal year."

or from one agency to another. [See *Detroit Fire Fighters Ass'n*, 449 Mich at 654 n 4 (CAVANAGH, C.J., *concurring in part and dissenting in part*).]

Here, County Charter § 8.9 governs the transfer and impoundment of appropriations:

> Transfers among appropriations and impoundments of appropriations may only be made in accordance with the appropriation ordinance as adopted or amended.

In addition, §§ 8.11.1 and 8.11.2 govern budget deficits during the fiscal year:

> 8.11.1 If the Executive certifies to the Commission a reduction in estimated revenue of any type that would cause an expenditure of an approved appropriation to exceed the available revenue and submits a proposed appropriation reduction, the Commission shall reduce appropriations to avoid the deficit. If the Commission fails to amend the appropriation ordinance within 45 days after the certification of the reduced revenue, the requested appropriation reduction submitted by the Executive becomes effective.

> 8.11.2 If the Executive certifies to the Commission that expenditures have exceeded appropriated levels and submits a proposed appropriation amendment, the Commission shall amend appropriations to avoid the deficit. If the Commission fails to amend the appropriation ordinance within 45 days after the certification of the excess expenditures, the requested appropriation amendment submitted by the Executive becomes effective.

Based on these sections, we conclude that the joint action between the Board and the Executive set forth in County Charter §§ 8.11.1 and 8.11.2 is as least as significant as the joint action required by Detroit Charter §§ 8–210, 8–211 in *Detroit Fire Fighters Ass'n*. Specifically, County Charter §§ 8.11.1 and 8.11.2 provide that in the event of a budget deficit, the remedial action first begins with the Executive certifying the problem to the Board, which must then decide to either remedy the problem itself or allow the Executive to do so on his or her own accord. Similarly, the Detroit Charter's §§ 8–210 and 8–211 provide that unexpected budget deviations are first identified by the mayor, and then addressed by the city council. Thus, with *Detroit Fire Fighters Ass'n* as our guide, we conclude that the county charter generally prohibits the Executive from impounding appropriated funds unless doing so would achieve economic efficiencies and without some corresponding action by the Board.

The only remaining question, therefore, is whether, under County Charter § 8.9, defendant Hackel may unilaterally impound the appropriated funds at issue. Section 5 of the appropriations ordinance provides that "[t]he appropriations within this ordinance and budget proposed by the Executive as modified by this ordinance, including all appendices, are the maximum authorized expenditures, but are not a mandate to spend." In our view, the reference to "mandate to spend" is a general recognition of the rule in Michigan that "an appropriation is not a mandate to spend."

*Detroit City Council v Mayor of Detroit*, 449 Mich 670, 680; 537 NW2d 177 (1995).[15]  But this rule, as explained previously, applies only to achieving economic efficiencies and is not a blanket authorization for a municipal executive official to impound appropriated funds at his or her discretion.  Further, if we interpreted § 5 of the appropriations ordinance as allowing defendant Hackel to unilaterally impound appropriated funds, it would run afoul of MCL 141.437, which prohibits a municipal executive official from doing so.  See *id*. at 660 (CAVANAGH, C.J., *concurring in part and dissenting in part*).

Consequently, we conclude that the County Charter and the appropriations ordinance allow the Executive limited authority to impound appropriated funds, and that authority is limited to situations in which doing so would achieve economic efficiencies, but it does not give him the authority to do so when impoundment of funds would frustrate the "stated purpose" of the appropriation.  As applied to this case, the November 16, 2021 minutes of the Board's meeting establish that the "stated purpose" of the $11,828,100 appropriation to the prosecutor's office was to fund the personnel requested by the defendant Hackel in the amount of $11,528,800, plus a communications director, executive assistant, intern coordinator, and part-time file clerk for that office.  The four respective Board motions for each of these positions refer to "amend[ing] the 2022 proposed" budget offered by the defendant Hackel.  Therefore, by impounding the additional $299,300 appropriated by the Board, the defendant Hackel frustrated the "stated purpose" of the line-item appropriation and exceeded his authority under the County Charter.

## D.  APPLICATION

In light of the above conclusions, resolution of this matter is straightforward.  In Count I, plaintiff requests a declaratory judgment that (1) "[t]he Macomb County Board of Commissioners [may] adopt an annual budget for Departments, headed by County Wide Elected Officials, (such as Plaintiff), that differs from the budget as recommended by the County Executive"; and (2) "[t]he elected Prosecuting Attorney (Plaintiff) [has] exclusive discretion to expend those general funds appropriated by the Macomb County Board of Commissioners for the benefit of the Prosecutor's Office, without interference by the Macomb County Executive (Defendant)."  Under MCR 2.605(A)(1), "a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted."  One purpose of a declaratory judgment is "to avoid multiplicity of actions by

---

[15] A March 17, 2022 Westlaw search for the phrase "mandate to spend" indicates that the phrase appears in 35 opinions, 18 of which were issued by Michigan courts and 17 of which were issued by every other state and federal court combined.  This, in our view, suggests that the phrase has acquired a somewhat unique meaning in Michigan law, presumably because Const 1963, art 5, § 20 provides that "[n]o appropriation shall be a mandate to spend."  We have explained that this constitutional provision, which applies to the state executive, "is intended to cover situations in which unforeseen efficiencies and economies might become possible."  *Int'l Union, United Auto, Aerospace & Agricultural Implement Workers of Am, UAW, Local 6000 v Mich*, 194 Mich App 489, 502; 491 NW2d 855 (1992) (quotation marks and citation omitted).

affording a remedy for declaring in expedient action the rights and obligations of all litigants." *Rose v State Farm Mut Auto Ins Co*, 274 Mich App 291, 294; 732 NW2d 160 (2006).

In this case, given that the county's fiscal year ends December 31, 2022, we find that it is appropriate to afford plaintiff the "expedient" remedy of a declaratory judgment. Therefore, with regard to the first request, the declaratory judgment is granted, insofar as the Board is permitted to adopt an independent budget under the County Charter.[16] With regard to the second request, the declaratory judgment is granted as defendant Hackel exceeded his authority as granted by the County Charter by impounding the funds at issue.

In Count II, plaintiff requests a writ of mandamus ordering defendant Hackel "[t]o allow Plaintiff full discretion to expend funds appropriated by the Macomb County Board of Commissioners to the Prosecuting Attorney's office, without interference by Defendant Executive or those Departments he controls."

> To obtain the extraordinary remedy of a writ of mandamus, the plaintiff must show that (1) the plaintiff has a clear, legal right to performance of the specific duty sought, (2) the defendant has a clear legal duty to perform, (3) the act is ministerial, and (4) no other adequate legal or equitable remedy exists that might achieve the same result. [*Berry v Garrett*, 316 Mich App 37, 41; 890 NW2d 882 (2016) (cleaned up).]

In *Detroit Fire Fighters Ass'n*, CHIEF JUSTICE CAVANAGH explained that when a municipal executive official impounds appropriated funds, a writ of mandamus is appropriate with the following scope:

> [A] trial court, faced with this issue during the fiscal year, should have the authority to issue a writ of mandamus to the mayor to do one of two things: implement the program or seek a formal amendment of the budget through joint action with the council. If the council believes that continued implementation of the program would be unwise, it, along with the mayor, can freely amend the appropriation. If, on the other hand, the council continues to support the appropriated program, the mayor has no authority to thwart the council's stated purpose of the appropriation. [*Detroit Fire Fighters Ass'n*, 449 Mich at 661 (CAVANAGH, C.J., *concurring in part and dissenting in part*).]

---

[16] Again, we do not decide whether the Board is permitted to do so under the UBAA as the Board is seeking its relief only pursuant to the County Charter, and defendants do not litigate the UBAA in this context.

Consistent with this persuasive guidance,[17] plaintiff's request for a writ of mandamus is granted as follows: Defendant Hackel is directed to either disburse the appropriated funds at issue to plaintiff or seek an amendment of the appropriations ordinance from the Board. If the Board declines to amend the appropriations ordinance, defendant Hackel must disburse the appropriated funds.[18]

In Count III, plaintiff requests injunctive relief ordering defendant Hackel to disburse the appropriated funds at issue. Given our resolution of Count II, the request for injunctive relief is moot.

In Count IV, plaintiff alleges that defendant Hackel violated MCL 141.438(5), the appropriations ordinance, and the County Charter. Plaintiff fails to state a claim for relief.

In Count V, plaintiff requests that this Court "enter an Order to Show Cause why this matter should not be expedited." Given that we have already ordered an expedited briefing schedule, this request is moot.

## III. CONCLUSION

We conclude that this Court has original jurisdiction under MCL 141.438(7) and that plaintiff has standing to maintain the instant action. We also conclude that under the County Charter, the Board may appropriate funds for a line item in excess of the recommendation of the Executive. We further conclude that defendant Hackel has the limited authority to impound appropriated funds to achieve economic efficiencies, but that he exceeded the scope of that authority in this instance by impounding funds that had the "stated purpose" of creating four new employment positions within the prosecutor's office.

Accordingly, pursuant to MCR 7.206(F)(3), we grant plaintiff's request for a declaratory judgment to that effect and declare that the Board may adopt an independent budget and that defendant Hackel exceeded his authority by impounding the $299,300 appropriated funds at issue.

Further, we issue a writ of mandamus directing him to either disburse those funds to plaintiff or seek an amendment of the appropriations ordinance from the Board. This resolves the last pending claim and closes the case.

---

[17] The remedy discussed by CHIEF JUSTICE CAVANAGH was found in Section V of his separate opinion and did not have majority support. Thus, it is not binding precedent. See *Ackley*, __ Mich App at __ (Docket No. 336063); slip op at 3 n 2. But, we find it to be persuasive.

[18] As defendants note, "[a] writ of mandamus is not appropriate when the act that the plaintiff seeks to compel the defendant to perform is a discretionary one." *Carter v Ann Arbor City Attorney*, 271 Mich App 425, 441; 722 NW2d 243 (2006). Arguably, because a municipal executive official has the limited authority to impound appropriated funds for economic efficiencies, he or she has "discretion" whether to impound those funds, and as a result, mandamus is not appropriate. However, we find defendants' economic efficiencies argument lacking here in light of the on-point, persuasive guidance of *Detroit Fire Fighters Ass'n* in this instance.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Thomas C. Cameron